A survey of 288 acres in the old purchase, made in 1788 upon a warrant for 100 acres issued in 1751, was returned into office before any other person had acquired a right, and was not objected to by the surveyor general. This is a sufficient title to recover in ejectment.

It has been the practice in the land-office since the revolution, to accept surveys made even since the year 1767 upon old warrants, notwithstanding they contained more than ten per cent. surplus.

## Lessee of STEINMETZ *against* YOUNG.

THIS was an appeal from the decision of the late Judge *Smith* at a Circuit Court for *York* in *May* 1808.

The plaintiff claimed under a warrant to *William Grouce* for 100 acres in the year 1751, founded upon an improvement. In *October* 1761 *Grouce* conveyed to *George Stevenson* and *George Ross*, describing the property as " a plantation and " tract of land containing by estimation 300 acres more or " less." A survey of $279\frac{3}{4}$ acres was made on the warrant, by *Thomas Armer*, an assistant deputy surveyor, on the 26th of *February* 1764, which was never returned; and it

was clear from the surveyor's field notes, that the survey was not correct, because 159 acres of it were included in another survey made three days before by *Armer* for *George Ross* and company, who were still the owners of *Grouce's* warrant. On the 9th of *November* 1788 a survey of 287 acres 137 perches was made for the lessor of the plaintiff on *Grouce's* warrant, which he then owned, including but a small part of the first survey; and this was returned and filed in the surveyor general's office on the 16th of *April* 1790.

The defendant gave some slight evidence of a settlement; and he offered to lay before the jury a warrant to himself, dated the 4th of *June* 1802, for " 60 acres, including an im- " provement, interest to commence the 4th of *March* 1790," which was founded on an application, with a certificate from two associate judges of *York* county, that from the oaths of two persons it appeared " that the land had been improved " *twelve* years and not before, that grain had been raised " thereon, and that there was a house built thereon, and per- " sons actually residing in it." This evidence was objected to, and overruled by the court; but the plaintiff's counsel afterwards gave permission to read it, which the defendant declined.

His Honour then gave it in charge to the jury, that if they should be of opinion the defendant had proved a settlement prior to the return of the plaintiff's survey in 1790, he would be entitled to their verdict. He stated the law to be, that if a survey were made, and before its return, the owner discovered that part of it was taken away by an older survey, he might for that, or other reasonable cause, lay it on other unappropriated land. But at the same time, he doubted on another point, which he would reserve for the consideration of the court in bank, namely, whether on a warrant for 100 acres, a survey of 287 acres in 1788 could be accepted.

The jury found a verdict for the plaintiff, which the judge refused to set aside; and the defendant appealed.

*Hopkins* for the defendant, contended first, that the judge had erred in rejecting the warrant, which had been offered in evidence. But the court was clear that this objection could not be taken, because although the warrant was at first re-

fused, it was afterwards permitted, and the defendant declined reading it.

He then argued upon the point reserved, that the survey in 1788 could not be maintained. He said that before the year 1767, the deputy surveyors were in the practice of returning much greater quantities than the warrant called for; and their surveys, notwithstanding the excess, were accepted. But that in that year, an order was made by the board of property, that no survey should be accepted which contained more than ten per cent. surplus, besides the usual allowance for roads; and the same restriction was in effect imposed by an act of the 8th of *April* 1785, which directed that surveys containing more land than was mentioned in the warrant, should be accepted, provided the excess was not more than ten per cent. 2 *St. Laws* 311. The act of 1785 he said was in many respects a general law. It extended to every part of the state, and therefore interposed a direct obstacle to the acceptance of the plaintiff's survey, which no practice or custom in the land-office could obviate. In *Kyle's Lessee* v. *White* (*a*), the court said, that if the survey in that case had been made at the present day, the objection founded upon its excess, would have been decisive.

*Bowie* and *Duncan* contrà answered, that as the plaintiff claimed under a warrant and improvement, his improvement at that early day, would give him a right to survey 300 acres, as was admitted by the dissenting judge in *Kyle's Lessee* v. *White;* and they contended that if a man had a warrant for 100 acres before 1767, and settled and improved more than that amount, he was entitled to a survey for what he had settled. So far as the act of 1785 was in question, they said it had been solemnly settled that that act did not extend to the old purchase, in which this land was situated; and as to the instructions or order of the board of property in 1767, it had nevertheless been the custom of the land-office since to accept surveys on warrants issued before the revolution, containing more than ten per cent. surplus. That at all events it was a matter between the plaintiff and the land-office, where no objection had been taken to it; for

(*a*) 1 *Binn.* 246.

as to the defendant, he had not proved a shadow of title to any part of the land included in the survey. The warrantee had as early as 1761 asserted his claim to 300 acres; and in 1764 it was intended to carry it into effect by a regular survey. No person had suffered by postponing the survey; and the commonwealth had been a gainer by receiving a high price for the surplus, instead of the reduced price of the present day.

TILGHMAN C. J. after stating the case, delivered the judgment of the court.

There is no doubt but that prior to the year 1767, a survey of 300 acres might have been made on a warrant for one hundred; such was the practice of the land-office. But in the year 1767, the board of property made an order, that no survey should be accepted, containing more than ten per cent. surplus above the quantity called for by the warrant, with the usual allowance of six per cent. for roads &c. An act of assembly to the same effect was made in *April* 1785; but as it has been expressly decided by this court in the case of *M'Ginnis's Lessee* v. *Albright, December* 1799, that this act does not extend to any part of the state, but that which lies within the last purchase from the Indians, it has no bearing on the present case. Judge *Smith* who had great experience in the business of the land-office, and was himself a deputy surveyor before the revolution, mentions in his charge, that he had himself surveyed 400 acres on a 300 hundred acre warrant, after the year 1767, which had been accepted, the party paying for the surplus; and that he knew of *no instance*, where a survey containing more than ten per cent. surplus had been *rejected* by the land-office, if it did not interfere with the rights acquired by others, before the return of the survey. It is certain that the proprietary officers were in the habit of sometimes dispensing with the general rules of office, where no injustice was done by it; and it is a striking feature in the present cause, that in the year 1761, *Grouce* considered himself as entitled to 300 acres on this warrant. At that time, he might have had his 300 acres surveyed; and if it was understood in the neighbourhood, that he meant to take 300 acres, or there were any lines, or marks, by which

notice was given of the extent of his claim, I think it highly probable, that the proprietary officers would have accepted a survey for 287 acres, after the year 1767, provided he had stated his case to the board of property, and made it appear, that no other person had acquired an interest in the surplus. The acceptance of such a survey was a matter between the warrantee and the proprietaries. No third person could be injured. Nor has the present defendant the least particle of equity in his case. What is it to him whether the plaintiff had more or less land included in his survey?

I have endeavoured to ascertain the practice of our own land-office, since the revolution; and it appears that many surveys have been accepted, made since the year 1767, on old warrants, containing more than ten per cent. surplus. Considering all the circumstances of this case then, without laying down any general rule, it is my opinion, that the return of the plaintiff's survey, which was filed in the land-office, before any other person had acquired a right, and to which no objection was made by the surveyor general, gave him sufficient title to recover in this ejectment.

It follows, that the judgment of the Circuit Court is to be affirmed.

                                        Judgment affirmed.