OveRton, J.
 

 delivered the following statement of the case, and opinion of the Court: —
 

 The object of this bill is to obtain a reconveyance of forty-eight acres of land, conveyed; as the complainant alleges, to the defendant by a mistake.
 

 The bill states that James White had a grant for 3,840 acres of land; that the complainant owned a small tract of forty-eight acres; and that White agreed to exchange nineteen acres, part of the 3,840 acre tract, for the forty-eight acres. That after this agreement, White sold the balance of the 3,840 acres, together with the forty-eight acres, to the defendant; and that the complainant then conveyed the forty-eight acres to the defendant, and received from White a conveyance for the nineteen acres.
 

 The complainant alleges that White had no title to the nineteen acres, inasmuch as the lines of the 3,840 acres, when run out, did not include it. The bill prays that the contract of exchange may be set aside, and the parties placed in
 
 statu quo.
 

 The answer denies a mistake, and asserts that the nineteen acres are within the lines of the 3,840 acre tract. The defendant also pleads that he is a purchaser for a full and valuable consideration, without notice.
 

 Colonel Robert Weakly was the surveyor of the 3,840 acres; he recollects making the two corners on the river, and, he believes, the northwest corner off from the river. He states that he has since seen the lower corner on the river, but cannot find the corner which is formed by a line running from the lower corner to the intersection of the north boundary.
 

 In the year 1807, Samuel Weakly surveyed the tracts of nineteen and forty-eight acres, as also some part of the lines of the 3,840 acre tract. Both complainant and defendant were present, and appeared to be satisfied.
 

 
 *349
 
 Robert Searcy states that after the grant to White issued, in 1792, he was shown by the complainant the lower corner on the river, and the corner now in dispute; that this corner is now lost, but he thinks it stood near the spot where the defendant insists it should stand. But no marks can be found from that place to the lower corner on the river.
 

 Agreeably to the call in White’s grant, it begins at the mpper point on the river; thence west, thence north, thence west, thence to the lower corner on the river, and thence with the meanders of the river to the beginning. To run these courses and the distances called for, no corners are found except at the beginning, the end of the first line, and the lower corner on the river; nor are any marks of an old date, except on the first line running west.
 

 The complainant’s counsel insists that there being no marks nor corners to be found in running the north and second west line, course and distance must be resorted to; and in that case, the nineteen acres will not be included within the bounds of the 3,840 acres. Consequently, it is urged, the conveyance was made under a mistake. 2 Fon. 150; 2 Com. Dig. 65?, tit. Chy. 4 C. 2.
 

 Upon a full view of this subject, the Court is clearly of opinion that this is not one of those cases in which course and distance must be resorted to. It is only the means of ascertaining boundary when ’others fail. If natural boundary, lines, or corners exist, they must be assumed as data in ascertaining others. When it is proved that a corner once existed, but is now lost, we must take the corner where it is proved to have once existed, although this may not agree with the course and distance from the remaining or standing corners. The understanding of both these parties in 1792, when Mr. Searcy was present with them on the ground, and saw the corner, shows that the corner stood where the defendant insists it did. Not being there now, is not to operate to the injury of any person. In the nature of things, corners are subject to decay, or to be lost in the lapse of years.
 

 It is insisted — and so it has been proved — that there is more than the nominal quantity of land within the limits of the 3,840 acre tract, to run it even as the complainant insists. Hence, it is argued that the Court ought not to go on parol proof, in establishing a corner not now to be found, which would increase the surplus. The Court has no hesitation in saying that the loss of corners- or lines ought not to bring along with it the loss of the honestly acquired rights of men. It would be attended with a high degree of injustice, and baneful consequences to society, if the houses and fields of families were to be thrown into a chaos of difficulty and litigation by such loss, — serving as a. bait to the eager grasp of the land hunter.
 

 When inquiring into the boundaries of land, it never enters into the con
 
 *350
 
 sideration of the Court what the quantity is, further than using it as one of the means by which boundary may be ascertained. This, however, like the principle of resorting to course and distance, can only apply in the absence of other proof.
 

 Haywood, for the complainant.
 

 Dickinson,
 
 for the defendant.
 

 When the boundaries of a tract of land are ascertained, the Court cannot, in a dispute between man and man, know there is more land in the tract than the original surveyor has returned upon oath. Weakly, who surveyed White’s tract originally, in the plat annexed to the grant, certifies that there are 3,840 acres, and no more, as the law implies. We are satisfied that he made the corner which now cannot be found. .The law does not authorize us to call another surveyor to disprove what Weakly has returned upon oath. If such a procedure were permitted, we should be under great difficulty in determining which surveyor was right. Happy, however, for society it is, that no such course can be adopted. If the estates of purchasers and families depended on resurveys of old patented lands, fatal would be the consequences to the peace of men. None but a surveyor is presumed to know, or to be able to find out, the quantity of land within ascertained limits. It is not within the common sphere of information appertaining to a lawyer to know these things; and much less does it comport with the information possessed by farmers, mechanics, and others, who purchase land for cultivation.
 
 All
 
 the law can require or expect them to know is, that the vendor of land has a title, and that the land sold is within his boundaries. These boundaries were made by an officer of government, in whose acts the citizens are commanded by the fundamental principles of society to place confidence. And as to the mode of ascertaining boundary, see Litt. Prin. 26, 44; Caine’s Rep. 13; 2 Mass. Rep. 380; 1 Bin. Rep. 148; 2 Bin. Rep. 520; 5 Johns. Rep. 450; 1 Hay. Rep. 22, 377, 238; 2 Hay. Rep. 148, 160, 183, 301, 347, 350.
 

 Independently of this part of the case the complainant cannot have a decree; because the defendant is a purchaser for a valuable consideration without notice. And if there was a mistake, both parties were equally under it. Hardin’s Rep. 102; Rob. Fra. Con. 502; Maryl. Rep. 222; 3 Bin. Rep. 54, 66: 1 Fon. Eq. 106.