# Beeson *against* Hutchison.

In ejectment for a tract of land, the title to which rests on a sheriff's sale, the levy itself is the evidence of what the sheriff actually levied on. The purchaser of the latter is not competent to prove it, in contradiction to the words of the levy.

When a tract of land has been conveyed by a certain description, it is not competent, in an ejectment for part of the same land, to prove by the vendor that that part was not conveyed, and that such was the understanding of the parties.

A survey may be made of four hundred acres and ten per cent, upon a warrant for less than four hundred, where there is an improvement called for, and an established settlement, with boundaries fixed by adjoining surveys.

ERROR to *Fayette* county.

Ejectment by John Beeson against Isaac Hutchison.

The case and points are fully stated by his honour, who delivered the opinion of the Court.

HUSTON, J.—The plaintiff here, who was plaintiff below, claimed seventy-five acres by a warrant for that quantity, dated the 5th of October 1831, on which he had a survey and return.

The defendant produced a warrant to Jeremiah Cook for one hundred and fifty acres, dated the 16th of February 1786. This warrant called for an improvement made in 1776, and defendant proved that the land had been a settled farm from about that time. He also produced the draft of a survey from the office of the present deputy surveyor: it was without date, but admitted to be the work of a man who was an assistant of the deputy surveyor, and to have been made before 1790. This paper is indorsed in the same handwriting, "finished for returning." The survey contained two hundred and fifty-five acres.

Defendant also produced a deed from Jeremiah Cook to Moses

Hall, dated the 16th of May 1794. This deed recited the warrant and the description, adjoining G. T., J. G., J. H. and others, &c., and in consideration of 400 pounds sells the before mentioned warrant and tract of land, surveyed or to be surveyed in consequence thereof, &c. Deed from M. Hall's executors, dated the 10th of July 1801, to James Jones; consideration 380 pounds. The description is in the same words as the last deed, and then added, after the words "surveyed or to be surveyed," these words: "together with seventy-five acres of land adjoining thereto, held by the said Jeremiah Cook, and conveyed or intended to have been conveyed to the said Moses Hall, though not included in the said warrant." He then produced another deed and mortgage, and sale and sheriff's deed, in which the land held by the warrant is described as above, and the seventy-five acres are sold as a separate tract, with no other description than "adjoining the above." The purchaser sold the improvement and warrant tract to the defendant: description as given first above.

It was understood and agreed, on all sides, that the seventy-five acres now in dispute were included in the survey of the defendant, made above forty years ago. The whole case is grounded on this. All the points on which the court are requested to give opinions admit this. Even the idle contest of whether a survey was ever made, did not go so far as to deny that if one was made it included the land in question.

The plaintiffs offered to prove by John Huston (who had been the owner before the defendant, and had been the real purchaser of the two parcels sold on the mortgage by the sheriff), that the land now in dispute is the same piece of land levied on by the sheriff of Fayette county, and sold to him as containing seventy-five acres: and that when Hutchison purchased from him, Huston, the seventy-five acres was not included in the sale; was not bought by Hutchison; and so distinctly understood between Huston and Hutchison: that when Hutchison presented a deed to Huston to be executed, it specifically embraced seventy-five acres adjoining that held by warrant and improvement; that Huston refused to sign it, and then the deed given in evidence was made. This was objected to and rejected.

The first branch. What the sheriff levied on is clearly not evidence; the levy itself is the evidence: to be sure there may be cases where parol evidence of what the defendant in an execution occupied as a farm, or of who adjoined his farm, &c.; but to give parol evidence by a third person, and that person the purchaser of what the sheriff actually levied on, independent of and contradictory to the words of the levy, would make a record something else than evidence of title. The latter part was also rightly rejected. We have admitted evidence to prove that a vendor, in showing the land to the vendee, pointed to a particular place as his line, and particular land as included, and that the line was in a different place, and that the land was not included. That was fraud. King *v.* Pile, 8

[Beeson v. Hutchison.]

*Serg. & Rawle* 166 ; and a late case at Sunbury in July last.(*a*)    But here John Huston by his deed referred to the former deeds ; and his own deed described the land sold, " all that certain messuage or tenement and tract of land, containing one hundred and fifty acres, be the same more or less, adjoining George Troutman, Jeremiah Gourd, John Hopwood and others, on which there is an improvement, known formerly by the name of Hall's or Cook's old mill place ;" and all the deeds prior to the sheriff's had recited the warrant and improvement, and sold all land surveyed or to be surveyed on it ; and all the deeds, the mortgage, and the sheriff's deed to Huston described the old tract and improvement, and also seventy-five acres adjacent thereto ; and the offer was to prove that " adjacent to the old tract" meant " part of the old tract," which would be going a little beyond the line of safety to titles.    Let it be remembered that the plaintiff had cut seventy-five acres out of the old survey, without consulting Hutchison where he should take it ; and this, as was contended through the whole trial, because two hundred and fifty-five acres had been surveyed on a warrant calling for an improvement and one hundred and fifty acres ; and the offer was in truth an attempt to prove, not the fact, but the law—and bad law too.

The next offer was in substance the same : to prove that Hutchison had said he did not buy the seventy-five acres adjoining the old tract.    It was totally irrelevant in a cause in which the matter in dispute was, what, under the circumstances, the survey and deeds, was included in the conveyance to the defendant.

Seven points were presented to the court, on which they were desired to give an opinion, and to file that opinion.

They however present only the questions, whether a man having a right by actual settlement to three hundred acres of land, but who takes a warrant for one hundred and fifty acres, is not limited to one hundred and fifty ; or whether, if he interferes with no other office title or improvement, he may include two hundred and fifty-five acres in his survey, and hold so much ; and whether, in the case of an actual, continued possession on the tract, the fact that his survey has not been returned at all, affects his title, or affects it so far that any stranger may take away a part of it.

Neither of these questions are new in this court.    Every man, whether settled on land or not, could, before the revolution, apply and obtain a right for three hundred acres, and since 1784 for four hundred.    If he took a warrant for a less quantity, and made a survey containing a less quantity, and any other person applied for a warrant, or made a settlement up to the lines so run, such other person would hold ; for the making a survey and designating thus his claim, left all out of his survey open to any other : this was the general rule where there was no fraud ; fraud or mistake, particularly if soon discovered, and early application be made for redress,

(*a*)   Bowman *v.* Bittenbender, *ante*, page 290.

would be exceptions to the rule. If the survey had been returned, an order of the board of property or of the surveyor-general would be necessary. Nichols *v.* Holliday, 3 *Yeates* 401 ; Biddle *v.* Dougal, 2 *Binn.* 37 ; Evans *v.* Nargong, 2 *Binn.* 55.

But where a man, having a *bona fide* continued settlement, for some cause, took a warrant for less than four hundred acres, and surveyed less than four hundred and forty-five, though more than ten per cent over the quantity specified in his warrant, and did not by such survey interfere with the existing right of any person, such survey has never been held void or even illegal. More than ten per cent surveyed on a warrant (which interfered with no right at the time), and returned, has been held good when not coupled with an improvement right. Steinmets *v.* Young, 2 *Binn.* 520.

Where the warrant is founded on a prior settlement, see Davis *v.* Keefer, 4 *Binn.* 160, and particularly the opinion of Smith, justice, from which the appeal was taken. See also Blair *v.* M'Kee, 6 *Serg. & Rawle* 202. The reader will find most of our cases on more than ten per cent, cited or referred to by counsel or the court, in this case. The conclusion to which the court came as to this point is, " where there is an improvement called for in a warrant, and an established settlement, with boundaries fixed by adjoining surveys or consentible lines, although the warrant might be for a less quantity than four hundred acres, a survey might be legally made of four hundred acres and ten per cent, the act of taking out the warrant for a less quantity not being *conclusively* a relinquishment of any part of his claim." And clearly, if such warrant is surveyed to contain a quantity less than four hundred, he can hold that quantity within such survey, unless abandoned by some subsequent act.

Is the omission to procure a return of survey, such an act? The case of Chambers *v.* Mifflin, 1 *Penns. Rep.* 74—79, and expressions applicable to the case of a person never in possession, were read as bearing on this case, though in page 80 the judge expressly excepts such cases as this. " I am aware also that the owners of many tracts have taken possession and occupied them, and sold them to others who occupied them or transmitted them to their children, and no returns of survey in the office. In such cases the officers issue orders and have returns made yet, and rightly ; for no injury is done to any one." That was foreseeing such cases as this. It is idle to talk of abandoning a plantation, or of a want of notice of a claim, while the owner is living on a farm and cultivating it.

Many, very many tracts are held by improvement more than half, and more than a whole century, without either warrant or survey. No law authorised a survey on an improvement on this side of the Alleghany ; and the legislature, from 1781 to this time, continued, at intervals, to pass acts extending the time for patenting lands and taking out warrants on improvements. These improvements have boundaries long since well established by adjoining surveys or other designations ; and a person can no more take away part of them by

a warrant at the present time, than he can take part of a patented tract. I am aware of troublesome questions arising on such right: a man has often sold part of such a tract; or died, and his land has been divided among his children, some of whom have never built or resided on their portions. I cannot, for a moment, suppose that if the deceased had a valid right to the whole, the parts are all lost (except the one on which the house stands) in consequence of a division amongst the children, according to law.

Judgment affirmed.