### Horace Gray v. Charles D. Gibson and Others.

An agreement for the formation of a limited partnership, executed under the laws. of New York, but not recorded so as to become effectual for the purpose de-. signed, has no tendency to prove an actual general partnership between the par-. ties named in it, in the absence of extrinsic evidence to show that they had actually entered into business as partners.

Where plaintiffs sue as partners, not upon any contract made or dealings had by them, as such, with defendant, nor upon negotiable paper, and the partnership is. put in issue, the real question to be submitted to the jury is, whether plaintiffs. are partners *as between themselves*, and not whether they have, in any way, made themselves liable as partners to third persons.  And it is erroneous for the. Court to charge the jury that if the evidence shows the plaintiffs have made themselves partners as to third persons, they have in fact become general part-. ners, and as such are entitled to maintain the action.

Whether persons are partners *inter se*, is to be determined by the understanding and intention of the parties as between themselves; and they can not be made such without the assent of every member, and his actual intention to become. a partner.

*Heard December 2d and 3d, 1858.  Decided May 13th, 1859.*

Error to Wayne Circuit.

Charles D. Gibson, William H. Mason, and Amasa Mason, brought replevin against Gray in the court below, for a quan-. tity of wheat.  Gray pleaded the general issue, and gave no-. tice under that plea that the wheat was the property of one.

Ells, and that he took the same as sheriff of the county of Wayne, by virtue of certain attachments issued to him against the property of Ells.

On the trial before a jury, plaintiffs gave in evidence Title I., of Chapter IV., Part II. of the Revised Statutes of New York; and then called one Graves as a witness, who testified as follows:

"I have knowledge respecting the formation of a partner-ship between the plaintiffs; there was an agreement of partnership reduced to writing, and signed in my presence, March 7th, 1853. I have not seen that agreement since September, 1857; it was then in the office and custody of the clerk of Erie county, New York. I asked the clerk to allow me to take the original agreement out of his office for the purposes of this trial, but he refused to allow me to do so. Mr. George Perkins, the subscribing witness to the original agreement, does not reside in the state of Michigan. I have a copy of that paper, which I took in pencil at the time I last had it. I then examined the signatures to original; they were genuine. There were acknowledgments of the execution of the certificate appended."

The plaintiffs then offered in evidence the copy which the witness testified to having so made. Defendant objected,—

1st. That it was not a copy of the whole paper filed with the clerk—the certificates of acknowledgment being essential parts of the instrument;

2d. If the paper was not, in fact, acknowledged, then, it not being such a paper as the county clerk was authorized to receive and file, it was not legally in his custody, and therefore no reason is shown why the original was not produced and proved;

3d. The paper does not show a general partnership was formed, nor tend to prove it.

The Court overruled the objections, and admitted the paper in evidence, and defendant excepted. The instrument was as follows:

GRAY *v.* GIBSON.

"This is to certify that the undersigned have formed a limited partnership, pursuant to the provisions of the Revised Statutes of the state of New York, to be conducted under the name or firm of Charles D. Gibson: that the general nature of the business intended to be transacted, is the Commission and Exchange business: That Charles D. Gibson, who lives in the city of Buffalo, county of Erie, and state of New York, is the general partner: That William H. Mason, who resides in Thompson, Windham county, and state of Connecticut, and Amasa Mason, who resides in the city of Buffalo, county of Erie, and state of New York, are the special partners: That the said William H. Mason has contributed the sum of fifteen thousand dollars, as capital, to the common stock, and the said Amasa Mason has contributed the sum of ten thousand dollars, as capital, to the common stock: That the said copartnership is to commence on the 10th day of March, 1853, and is to terminate on the 10th day of March, 1858. Dated this 7th day of March, 1853. "WILL. H. MASON. [L. S.]" "AMASA MASON. [L. S.]" "CHARLES D. GIBSON. [L. S.]" "Witness: GEORGE PERKINS, to W. H. Mason."

The plaintiffs then offered in evidence a paper, purporting to be a copy of the same instrument, with certificates attached of the acknowledgment of execution thereof by each of the signers, one before a commissioner of deeds in New York, and the other before an officer in Connecticut; to which copy was annexed the certificate of the clerk of Erie county, New York, that the original, with the certificates of acknowledgment endorsed, was filed in his office, March 7th, 1853, together with an affidavit, of which the following is a copy:

"*Erie County, City of Buffalo*, ss.: Charles D. Gibson, being duly sworn, deposes and says, that he resides in the city of Buffalo, Erie county, and state of New York; that he is the general partner named in the above certificate; and that the sums specified in the above certificate to have been contributed, by each of the special partners therein named, to the common stock, have been actually, and in good faith, paid in cash." (Signed and sworn to.)

The clerk further certifies that these instruments were never recorded in his office.

The clerk's certificate was verified in the manner provided by the act of Congress for the authentication of records.

To the introduction of this certified copy, defendant objected, —

1st. That the act of Congress, providing for the authentication and exemplification of office books, does not extend to "files"—to papers filed, but not recorded;

2d. That the law of New York, under which it is claimed these papers were filed with the county clerk, requiring that they should be recorded, and as it appears they have not been, they can not be made evidence;

3d. There is witness to but one signature;

4th. That the officer before whom William H. Mason acknowledged the certificate in Connecticut was not author_ized to take the same by the laws of New York;

5th. That the acknowledgment of the certificates by Gibson and Amasa Mason does not appear to have been made before an officer authorized by the law of New York to take the same:

6th. There is no provision in the law of New York by which a limited partnership can be converted into a general partnership until after the record of the certificates and affidavits; and as these papers are shown not to have been recorded, no limited partnership could have been proved; hence the papers offered do not even tend to prove the existence of a general partnership between the plaintiffs.

Which objections were overruled by the Court, and the papers read in evidence.

Plaintiff then introduced in evidence the laws of New York governing the acknowledgment of such instruments, one of which specified certain officers authorized to take the same, but not including commissioners of deeds, and another permitted such acknowledgments to be taken before any

officer authorized to take acknowledgments to conveyances of lands. He also introduced the following section from the Revised Statutes of that state, admitted to be still in force:

"Copies of all papers duly filed in the office of the county clerk, and transcripts from the books of the records kept therein by such clerk, with the seal of his office affixed, shall be evidence, in all courts, in like manner as if the originals were produced."

Plaintiffs then called one Sawyer as a witness; who testified as follows:

"In the fall of 1853, I had business transactions with Gibson. I was going to Chicago. He asked me to take along some of his blank acceptances, and if I found an opportunity to advance them in produce to go forward, to do so. I was to have the produce shipped to him at Buffalo. I agreed to do so. I took the acceptances, which were blank drafts, without signature, date, or amount, with the name of Charles D. Gibson written across the face, with me to Chicago. I made an arrangement with Ells to advance him one dollar per bushel on 15000 bushels of wheat for Mr. Gibson. I do n't remember that I stated who Mr. Gibson was. Think Ells said he had heard of him. After I made the arrangement with Ells, I left for Milwaukee, and was absent three days. On my return to Chicago I had another interview with Ells. I asked him in regard to the shipping of the wheat. He gave me a bill of leading which I mailed to Gibson, at Buffalo, on the evening of October 15th."

The plaintiffs then introduced and proved the bill of lading, which was in the following words:

"N. B. ELLS, COMMISSION MERCHANT.

"*Chicago*, Oct. 15th, 1853.

"Shipped, in good order and well conditioned, by N. B. Ells, as agent and forwarder, for account and risk of whom it may concern, on boat the bark called the North Star,

whereof John Wake is master, now lying in this port, and bound for Buffalo, N. Y., the following articles, being marked and numbered as in the margin, and to be delivered in like good order at the port of Buffalo, N. Y. (the dangers of navigation excepted), unto the consignee named in the margin, or their assigns. Freight and charges to be paid as noted below. In witness whereof, the master of said vessel hath affirmed to three bills of lading, all of this tenor and date, one of which being accomplished, the others to stand void.

| "Acct. of N. B. Ells.<br>Care Chas. D. Gibson,<br>Buffalo, N. Y. | 14172 45-100ths bushels wheat.<br>Freight to Buffalo, fifteen<br>cents per bu. |
| --- | --- |

(Signed)          " JOHN WAKE."

On the evidence being closed, defendant asked the Court to charge the jury, that in order to recover as plaintiffs, the plaintiffs must show a right as between themselves to do so, and are bound by the agreement made among themselves. The Court declined this request, but charged that if the evidence showed that the plaintiffs had made themselves partners as to third persons, they had, in fact, become general partners, and as such were entitled to maintain this action. To which refusal to charge, and charge as given, defendant excepted.

A verdict having been rendered for plaintiffs, and judgment given thereon, defendant brought error.

The errors assigned in this Court were,—

1st. That the judge erred in admitting in evidence the sworn copy of the certificate;

2d. That he erred in admitting in evidence the exemplified copy of the certificate;

3d. That he erred in charging the jury that if plaintiffs had made themselves partners as to third persons, they had in fact become general partners, and were entitled to sue as such.

*H. K. Clarke*, and *S. T. Douglass*, for plaintiff in error:

1. A writing deposited with a public officer does not become a public writing unless such deposit be authorized by law.— 2 *S. & R.* 23; 1 *A. K. Marsh.* 24; 5 *Day*, 298.

2. The certificate of a public officer is not admissible in evidence unless expressly made so by law.— 3 *Pet.* 28; 7 *Wend.* 377; 1 *Wash. C. C.* 333; 3 *Ibid.* 529. The paper which plaintiff below desired to prove, not having been recorded, of course it can not be urged that a copy of it could be an exemplification of any "office book" under the act of Congress. Nor are *files*,—papers filed, but not recorded—*records.*— 3 *Denio*, 238; 3 *Bouv. Inst.* 370.

3. The agreement to form a special partnership between plaintiffs, did not tend to prove the formation of a general partnership. The two things are radically different, and proving the one, proves in the most emphatic manner that they had not made an agreement for the other.

4. If testimony be improperly admitted which may have influenced the verdict, the judgment rendered on such verdict will be reversed. The Court will not inquire whether there was sufficient proof in the case of a general partnership without the certificate. It is enough to know that the jury were allowed to consider proofs which were calculated to mislead them. — 3 *Wend.* 418; 11 *Ibid.* 83; 1 *Dana*, 155; *Ibid.* 502; 2 *Bibb*, 89; 11 *Penn.* 469; 11 *Ired.* 632.

5. A liability as partners does not constitute a partnership in fact.— *Coll. on Part.* §§ 78 *to* 98.

*J. M. Howard*, and *W. Gray*, for defendants in error:

1. The law of New York provides for the *filing*, as well as recording, of an agreement for a limited partnership. When filed with the clerk, though not recorded, it becomes subject to his official custody, and no power is given him

to part with or remove it. Such being the case, it was, competent to prove its contents by a sworn copy.

It was also competent to prove it by a copy authenti- cated under the act of Congress of 1804.— See *Story on Const.* 180; 10 *Barr*, 158. That *files* belonging in a public office are public records, see 3 *Dane's Abr.* 308, *et seq.*; *Bouv. L. D.*, verb. " *Record.*"

2. The recording of such an agreement, under the law of New York, operates in favor of the special partners sim- ply as an exemption from, or rather a limitation of, their com- mon law liability to creditors. In the present case, in con-. sequence of the failure to record, the parties had not gone far enough to secure this exemption to the Masons, and the agreement must be therefore viewed as a similar one. would have been viewed if not filed. If acted upon, it indubitably made them partners as to third persons, whether it was recorded or not. The test of the partnership is. the community of interest of the parties in the stock. Such an agreement may not be complete evidence of the exist-. ence of a partnership, but was competent to go to the jury.

3. The charge of the judge, that if plaintiffs had made. themselves partners as to third persons, they had become general partners, and were entitled to sue as such, is in accordance with the principles of the law of partnership, and with adjudged cases. — See *Coll. on Part.* §5; 14 *Vt.* 540; 21 *Ibid.* 433.

CHRISTIANCY J.:

The view we have taken of the question presented by the third assignment of error, renders it unnecessary to. determine those raised by the first and second.

ʿ We shall therefore notice the matters covered by the first and second assignments of error only so far as they may tend to throw light upon the question raised by the third. We think it unnecessary to the decision of the cause to determine whether the copies of the certificates

were duly proved as copies, or were admissible as such; because we think the original certificate, with the due preliminary proof of execution, could not, of itself, without evidence *aliunde*, have any tendency to show a partnership of any kind between the plaintiffs. If admissible at all for such a purpose, it must have been in connection with acts of the parties tending to show they had actually gone into business as partners. The only purpose for which such a certificate was authorized by the New York statute was, we think, when the same should be duly recorded, to create a limited partnership under the statute as to third persons. We do not think the statute contemplates this as necessarily *the agreement* or contract of partnership between the parties themselves; certainly not as the only agreement, though doubtless the parties might make it so. But whether the *record* of this certificate could be admissible evidence for the plaintiffs, for any other purpose than to show a *limited* partnership restricting the liability of the special partners, may well be questioned; as this would seem to be the only purpose, beneficial to the partners, for which the statute authorized the record. And it is perhaps still more questionable whether the affidavit filed with the certificate, could, if duly authenticated, be admitted for any purpose in favor of the plaintiffs as general partners in this case, to prove the facts set forth in it, any more than if such affidavit had been made on the trial of the cause. But however this may be, the certificate in this case not having been recorded, did not, and was not claimed to, have the effect to create a limited partnership (see *N. Y. R. S. Part* 2, *Title* 1, *Chap.* 4), and the only natural and legitimate inference to be drawn from the unrecorded certificate alone, would seem to be that the attempt to create such limited partnership had been abandoned; but we are unable to perceive how this, of itself, without other evidence, could warrant the further inference, or tend in any degree to prove, that the plaintiffs had formed a general

partnership, or any partnership whatever, or that they had gone into business as partners. It is probably true that this inference of abandonment might have been rebutted by proof of the subsequent acts of the parties, tending to show they had gone into and carried on business in accordance with its terms; and though the tendency of this evidence might be only to prove them, in some degree, special partners as between themselves, it would, as we shall endeavor to show, be equally available to them in the present suit.

It is also true, that, without the aid, and even in contradiction of the certificate, the plaintiffs might have proved a partnership between themselves, by written or oral proof, by their mode of doing business, joint contribution of capital, participation in profit and loss; or by showing that they actually carried on the business in question *ostensibly* as partners, and that they *recognized* each other as partners in the business *as between themselves;* and it is possible, that such facts might have a greater tendency to prove such partnership when taken in connection with this unrecorded certificate than if considered alone without reference to it. The certificate, in this view, might, if properly proved, be admissible as tending to explain such extrinsic facts, and the acts of the parties. But, standing alone, without any extrinsic evidence tending to show that they had actually entered into business as partners, it could not, we think, tend to prove an actual partnership between the plaintiffs; and if no such extrinsic evidence was given, we think it would have been the duty of the Court to charge the jury that there was no legal evidence from which they were authorized to find the fact of such partnership.

There may have been other evidence bearing upon this point; it was conceded on the argument that there was some slight evidence of this kind; but the case does not disclose it, and of its precise character we are not informed.

But the partnership was controverted by the defendant; and the charge of the Court on which the third assignment

GRAY v. GIBSON.

of error was based, was manifestly, we think, intended to apply to all the evidence in the case bearing upon this question, whatever that evidence might be, and to furnish to the jury a legal standard for weighing and applying the evidence.

The charge was, that, "If the evidence showed that the plaintiffs had made themselves partners as to third persons, they had, in fact become general partners, and as such were entitled to maintain this action."

Was this charge correct? The plaintiffs had sued jointly for the wheat; they were therefore bound to show a joint right to, or interest in the wheat as between themselves. They sued as *partners*, and claimed the joint right or interest in no other way. It was necessary, therefore, to prove a partnership which would constitute such joint right or interest. But, though this joint right would depend upon the fact whether they were partners *as between themselves*, it was in no way material whether, as between themselves, they were general or special partners, or what was the share of each in the capital, or what special stipulations existed between them, not inconsistent with the existence of a partnership. If partners at all as to this wheat, they would have a joint interest in it, and a joint right of action in respect to it; they would be general partners as to third persons. Had they perfected their arrangement for the creation of a limited partnership, the right of action would have vested in one of the partners only, though, as between themselves, they would still have had a joint interest. But it is the statute alone which gives the right of action to the single partner; and in cases not coming within the statute, it is not competent for partners, *by any* arrangement between themselves, to vary their right of action against third persons, nor to give the right to one of their members to bring an action in his own name against strangers. —*Radenhurst v. Bates*, 3 *Bing.* 470; *Clark v. Howe*, 23 *Me.* 560; *Davies v. Hawkins*, 3 *M. & S.* 487, and see *Horback v. Huey*, 4 *Watts*, 445. Had the Court charged the jury that if they should find that the plaintiffs went into business as

GRAY *v.* GIBSON.

partners under and in pursuance of this certificate, and were so in business at the time this transaction occurred, the plaintiffs would be general partners, and entitled to sue as such, the charge would not have been erroneous if the certificate was properly in evidence, because, as to the distinction between general and special partners, it would have been immaterial, and such a charge would substantially have submitted the question whether the plaintiffs were partners as between themselves, and would not have given to the jury a false standard by which to estimate the evidence. But this is not the fair import of the charge as given, nor could it have been, we think, so understood by the jury.

Taking this charge in connection with the request in answer to which it was given — and the request may be looked to for the purpose of understanding the charge, though its refusal is not assigned for error — the effect of the charge is to deny the necessity of showing any partnership or joint right as between the plaintiffs themselves, and to instruct the jury that any thing which would make them partners as to third persons, would enable them to sue and recover as such. This was applying the same rule in all respects to the proof of partnership of plaintiffs, as would be applicable had they been sued as partners. We do not understand this to be the law, especially in a case like the present. Had the plaintiffs held themselves out to defendant as partners, and had he contracted with them as such in respect to this wheat, they might, perhaps, have maintained an action as partners against him for any thing growing out of the contract, without showing that they were strictly partners as between themselves. — *Bond v. Pittard*, 3 *M. & W.* 358. Or if the suit had been upon a written contract made expressly with all the plaintiffs as partners, or upon negotiable paper, endorsed in blank, &c., no partnership, perhaps, need be proved. But here the suit is not upon a contract. The defendant is a stranger to the firm. The name of the firm is that of a single individual. The blank acceptances with which the wheat is claimed to have been

purchased, were in the name of Charles D. Gibson alone, and the wheat consigned to his name. There is nothing, therefore, in the name of the firm, or in the transaction connected with the purchase and shipment of the wheat, *prima facie*, to suggest the idea of a partnership; nor, as an act of the parties, can it tend to prove an actual partnership. No doubt a partnership can be proved in such a case as well as in ordinary cases, though it would require evidence at least as strong as that usually required to establish a partnership between plaintiffs. At least, there is nothing to take the case out of the general rule, that the right of action by partners depends upon the contract of partnership as existing between themselves.— *Coll. on Part. 3d Am. ed. (by Perkins)* §§ 3, 5, *and* 6.

The question, whether persons are partners *inter se*, is to be determined by the understanding and intention of the parties — or, in other words, the contract, as between themselves; and no partnership, as between the parties, can be formed without the assent of every member, and his actual intention to become such. But several persons may become partners as to third persons, and liable to be sued as such, by holding themselves out as partners to the world, or to any particular person with whom they may deal, by verbal admissions and declarations, by acts which may justify third persons in believing them to be partners, and in a great variety of ways, without any actual partnership between themselves, and even contrary to their own express contracts with each other. These are elementary principles in the law of partnership, and hardly require the citation of authorities. — See *Coll.* §§ 78 *to* 98; *Pars. Mer. Law*, 166; *Bird v. Hamilton, Walk. Ch.* 361.

Though much of the same kind of evidence usually adduced to prove the partnership of defendants (partnership as to third persons) is often admissible also as tending to show a partnership between plaintiffs (partnership *inter se*), yet much which would be admissible for the former purpose would be wholly inadmissible for the latter, such as the

GRAY v. GIBSON.

naked admissions of the parties; and much, if not most of that which would be equally admissible for either purpose, such as acts of the parties, would have much more decisive weight and significance to prove a partnership *against* defendants, than to prove the like partnership in their *favor* if plaintiffs. Mr. Greenleaf in his work on Evidence, vol. 2, §483 speaking of evidence to prove partnership of defendants, very properly says: "The utmost strictness of proof is not required; for though, when they sue as plaintiffs, they may well be held to some strictness of proof, because they are conusant of all the means whereby the fact of partnership may be proved, yet when they are defendants, the facts being less known to the plaintiff, it is sufficient for him to prove they have acted as partners, and that by their habit and course of dealing, conduct and declarations, they have induced those with whom they have dealt to consider them as partners."

The question of partnership which *should have been* submitted to the jury was, whether the plaintiffs were partners as *between themselves:* the question *actually* submitted, was, whether they had rendered themselves partners as to third persons; the fair import of which is, that if the evidence was such as would be sufficient to render them liable as partners, it was sufficient to enable them to recover as such. The charge submitted a question not properly involved in the cause; it gave the jury an erroneous standard by which to estimate and apply the evidence, and the verdict does not determine the real question involved, because that question was not submitted to them.

The charge was therefore equally calculated to mislead, whether the certificate was properly in evidence or not,—whether it was the only evidence of partnership, or was accompanied with other evidence tending to show that plaintiffs had gone into business as partners. It is difficult to conceive any state of the evidence (short of the admission of the partnership) in which this charge would not be calculated to mislead.

6 MICH.— V.

For this error, the judgment must be reversed, and a new trial granted.

MARTIN Ch. J. concurred.

MANNING J.:

I think the sworn copy of the certificate of partnership was properly admitted to go to the jury. Three objections were taken to it:

1st. "That the paper produced by the witness was not a copy of the whole paper filed with the clerk, the certificates of acknowledgment being essential parts of the instrument," &c.

2d. "That if the certificate of partnership was not, in fact, acknowledged by the plaintiffs, then, it not being such a paper as the clerk of Erie county was authorized to receive and file in his office, it was not legally in his custody."

These objections do not very clearly state what I suppose to be the real objection intended. The first objection would seem to be that the certificates of acknowledgment were a part of the certificate of partnership; and the second, that there was no evidence that the certificate of partnership had been acknowledged. As the certificates of acknowledgment are no part of the certificate of partnership, which is a complete instrument in itself without them, and as the witness stated that certificates of acknowledgment were appended to the original certificate of partnership on file, I suppose the objection intended in each case to be this: That the copy should contain a transcript of the certificates of acknowledgment, to enable the Court to determine whether the acknowledgments were taken by proper officers, and in due form; the objection assuming these facts to be essential to the legal custody of the certificate of partnership by the clerk.

The rule requiring the best evidence to be adduced, refers, not to the weight of evidence, but to its quality, when com-

pared with other evidence to prove the same fact, in possession of the party, or within his reach by due process of law.   The reason of the rule—and it is to that we should look in determining its applicability in a given case—seems to be, that when superior evidence is attainable, the law presumes a sinister or improper motive in offering secondary evidence.   It can not, on principles of ordinary prudence, otherwise account for a party's willingness to hazard his case on such evidence, when that which is more satisfactory and conclusive is at his command.   All suspicion, however, is removed, and secondary evidence is allowed, provided it be the next best, when it is shown, to the satisfaction of the Court, that, without any fault of the party, the superior evidence is not to be had.   Hence oral evidence is received of the contents of a bond, or other written contract, after proof of its execution and loss or destruction;   or, if it be in possession of the adverse party, after due notice to produce it on the trial, and its refusal;   and when a contract, or other writing, to give it legal effect, is required to be placed in custody of the law, and to be kept at a particular place, and it is shown to be in such custody, as in the case before us;   its non-production, I think, is sufficiently accounted for within the reason of the rule we have been considering, to admit secondary evidence of its contents. "Rules of evidence," says Thompson J., "are adopted for practical purposes in the administration of justice; and must be so applied as to promote the ends for which they were designed."—*United States v. Reyburn*, 6 *Pet.* 367.

If the object of plaintiffs had been to prove a partnership under the statute, the form of the acknowledgments, and the officers before whom they were taken, would have been material to enable the Court to determine whether the act had been complied with.   As the evidence, however, was not offered with that view, but to prove a partnership outside of the statute, the only question was whether a sufficient showing had been made to admit secondary evidence. Did the evidence offered for that purpose show the certifi-

cate of partnership in the legal custody of the clerk of Erie county? I think it did. The law relative to the reception and filing of papers, and the subsequent power of the officer over them, I understand to be this: He may refuse to receive them when they are not properly authenticated, and, if he err in refusing them, the injured party may compel their reception by mandamus: That, when received and filed, they cease to be private papers, and become public records; and that the officer can not afterwards, by any act of his, divest the public of its interest in, or control over, them. His subsequent powers are those of a custodian only. He can not undo what he has already done. Such a power would be extremely dangerous in such an officer, and, if sanctioned by law, would open a door that might be used for the worst of purposes. It was therefore immaterial whether the certificate of partnership should, or should not, have been received and filed in the first instance, as it was acknowledged, and the requirements of the law seem to have been complied with, in form, if not in substance; for, admitting the officer erred in receiving it, it was still in his official custody.

The third objection was, the certificate did not tend to prove a general partnership. I think it did, and shall notice this objection more particularly hereafter.

The plaintiffs next offered in evidence, duly authenticated under the act of Congress, a copy of the certificate of partnership, with the certificates of acknowledgment, and a copy of an affidavit of Charles D. Gibson, stating that the capital mentioned in the certificate had been paid to the partnership; the statute requiring such an affidavit to be made and filed with the certificate. The evidence was objected to, and an exception was taken to the ruling of the court admitting it.

1st. Because the act of Congress of 1804, providing for the authentication of office books, does not extend to "files"— to papers "filed, but not recorded."

I have already stated that when contracts, or other writings, to give them a legal effect they would not other-

wise have, are required by law to be deposited with, and to be kept by, a public officer, they are, when so deposited, in custody of the law; that the public has an interest in them; and that they cease to be private papers, and become public property. And when they come in possession of the officer in strict compliance with law, they are, in my opinion, public records within the meaning of the Constitution of the United States, and of the act of Congress of 1804. They are memorials of acts affecting the public, and for that reason are required to be placed in its keeping. The public interest is asserted by the law in requiring the deposit. The act of Congress, it is said, does not extend "to papers filed but not recorded." I see no ground for the distinction. Enrollment is not essential to a record. The files and journal entries of our courts are the only records we have of their judgments — the common law judgment record having been abolished. The objection admits, that if the certificate had been recorded, that is, transcribed into a book, the transcript would be a record within the act. When the original is to be permanently left with the officer, and is not deposited for recording only, I see no good reason for the transcript being a record and the original not; or why a copy of the former, which is itself but a copy, should be better evidence than a copy of the original.

The second objection is, that as the statute of New York required the certificate to be recorded, and it was not, a copy of it could not be made evidence. Why not evidence? Because it was not recorded, and therefore was no record; and not being a record, could not be exemplified under the act of Congress. Viewed in this light, for I can not see its bearing in any other, this objection is a repetition, in a roundabout way, of the one I have just been considering, and is already answered.

The third and fourth objections were abandoned on the argument.

The fifth objection is "That the acknowledgment of the

certificate by Charles D. Gibson and Amasa Mason does not appear to have been made before an officer authorized by the law of New York to take the same."

The acknowledgment was before a commissioner of deeds, who is not one of the officers named in the act authorized to take the acknowledgment. By a subsequent statute, which was in evidence, it might be taken by any officer authorized to take the acknowledgment of conveyances of land; but no statute was in evidence showing commissioners of deeds could take such acknowledgments. For that reason, we are asked to reverse the judgment, and send the case back to the court below for a new trial. If the acknowledgment was not before a proper officer, the certificate is no record; and if not a record, it could not be exemplified under the act Congress. The question is of no importance as it respects the certificate of partnership, for that was already in evidence, and a subsequent error in admitting a second copy would not vitiate the prior evidence. It is important, however, as it respects the certificates of acknowledgment and the affidavit of Gibson. At first view it seems a little surprising that plaintiffs' attorney, with the Revised Statutes of New York in his hands, should not have turned to the law authorizing commissioners of deeds to take acknowledgments of conveyances of real estate. But on looking into the bill of exceptions, it is obvious to my mind how the omission occurred. The statute providing for limited partnerships, was the only statute of New York in evidence when the objection was made and overruled. After the evidence had been received, and not before, as appears from the bill of exceptions, the statute was introduced and read in evidence, authorizing the acknowledgment to be taken by officers empowered to take acknowledgments of conveyances of real estate. This undoubtedly was supposed at the time to be a complete answer to the objection, more especially as the name, commissioner of deeds, would of itself seem to indicate the duties of the office, and as no further objection was made.

If defendant was not satisfied with it as an answer, he should have renewed his objection, varying it to suit the new aspect of the case, and pointing out particularly the still existing defect, that plaintiffs might obviate it by further testimony, if in their power. Not having done so, he must be considered as having assented to the sufficiency of the evidence for that purpose.

There is another reason, equally conclusive with me, why the judgment should not, on this account, be disturbed. When the error is one for which a new trial will not be granted, there would be an absurdity in reversing the judgment. In *Duncan v. Duboys*, 3 *Johns. Cas.* 125, the Court refused to grant a new trial because the printed statute book was read in evidence of a *private* act, when, from an exemplification of the act, it appeared the printed book was correct. In *High v. Wilson*, 2 *Johns.* 46, which was an action of trespass for taking goods, defendant justified as sheriff, under an execution against one Blanchard. On the trial it was objected, that defendant, to make out a justification under the execution, must prove the judgment on which the execution issued. The objection was overruled; and a verdict having been rendered for defendant, plaintiff moved for a new trial. On the motion, the judgment record was produced, and the Court refused a new trial, although the judge erred in admitting the execution in evidence without proof of the judgment.— See *Burt v. Place*, 4 *Wend.* 591; *Watson v. Delafield*, 2 *Cai.* 224. In these cases the admissibility of the evidence depended on the existence of a record that was not produced and proven at the trial; and the subsequent motion for a new trial failed, on the record being produced, as the truth of it, had it been used on the trial, could not have been controverted. In the case before us the objection is, that the evidence should not have been permitted to go to the jury, because the plaintiffs did not produce a statute of the state of New York authorizing commissioners of deeds to take acknowledgments of conveyances

of real estate. May not this Court now look into the statutes of that state to see whether there is such a law? I have no hesitation in saying we may. We have a statute declaring printed copies of the statutes of sister states, "if purporting to be published under" their authority, "shall be admitted in all courts, and in all proceedings within this state, as *prima facie* evidence of such law." — *Comp. L.* §4315. The question, *If purporting to be published under authority of the state*, is a question for the Court to decide, upon inspecting the printed copy. It is not, under the statute, a question of fact for the jury; and it seems to me we may look into the statutes of New York to decide a question of law, made on the trial under a statute of that state, in the same way we would look into our own statutes to decide a question raised under them. When the statute is one of a sister state, it should be produced and read on the trial for the information of the Court, which is not supposed to know the statute laws of other states; but if it is not, and the decision is in conformity with the statute, it is not a good ground for reversing the judgment. We are as well prepared now, after having looked into the statutes of New York, to decide a commissioner of deeds could take the acknowledgment, as we would be had the statute been read on the trial; and under such circumstances, it would be sacrificing substance to form to send the case back for a new trial.

The sixth and last objection is, that "there is no provision in the law of New York by which a limited partnership can be converted into a general partnership, until after the record of the certificate and affidavit; and, as these papers are shown not to have been recorded, no limited partnership could have been proved; hence the papers offered do not even tend to prove the existence of a general partnership between the plaintiffs."

It is a sufficient answer to the first part of this objection, to say that the evidence was not offered to prove a limited

partnership, or that such a partnership had afterwards become a general partnership. The latter part of the objection—that the papers do not tend to prove a general partnership—is a repetition of the third objection taken to the sworn copy; which I have already answered in part, and shall hereafter notice more fully.

Three exceptions were taken to the charge of the Court. The first was waived on the argument. The other two are as follows:

The Court was asked to charge the jury, "That in order to recover as plaintiffs, the plaintiffs must show a right as between themselves, to do so, and are bound by the agreement made among themselves." The Court declined so to charge, but charged the jury that if the evidence showed that the plaintiffs had made themselves partners as to third persons, they had, in fact, become general partners, and, as such, were entitled to maintain their action. To which refusal and charge, the defendant excepted.

The error assigned on this part of the record is, that the circuit judge erred in charging the jury that if the plaintiffs had made themselves liable as partners to third persons, they had become partners in fact, and were entitled to sue as such.

The charge was erroneous, in stating that if plaintiffs had made themselves liable as partners to third persons, they might sue as partners. To sustain an action as partners, plaintiffs must be partners in fact. A partnership must actually exist between them, and they must have a joint interest in the subject-matter of the suit. Two or more persons who are not partners, by holding themselves out to the world as partners, will make themselves liable as partners to persons deceived thereby into dealing with them as partners. Though not partners in fact, the law, in such circumstances, to prevent fraud, imposes on them the liability of partners. The evidence of a partnership in such cases is not of a positive and direct character, but circumstantial only—

GRAY v. GIBSON.

that is, it is not of a partnership in fact, but of circumstan-
ces from which a partnership may be inferred—and the
evidence may be such as not only to warrant a verdict of
partnership as to third persons, but of a partnership in fact;
the only difference being, the evidence should be stronger
to find a partnership in fact, than to warrant a verdict of
partnership as to third persons only. There was nothing in
the character of the evidence before the jury, so far as it
appears from the bill of exceptions, calling for this discrimi-
nation in the charge of the Court.

The error was in charging the jury on a rule of law hav-
ing nothing to do with the case. The evidence was of a
partnership in fact, and not of circumstances only from which
a partnership might be inferred. I do not see how the jury,
on this part of the case, could have rendered a different ver-
dict from the one they did. The evidence consisted of a
written admission of the partnership, signed by all of the
plaintiffs, and acknowledged by them before an officer author-
ized by law to take the acknowledgment. It states they
had formed a limited partnership, under the name or firm of
Charles D. Gibson, and that William Mason had contributed
fifteen thousand dollars capital, and Amasa Mason ten thous-
and dollars. It also states the business to be transacted by
the partnership, and that the partnership was to commence
on the 10th of March, 1853, and to terminate on the 10th of
March, 1858. The certificate is dated on the 7th of March,
1853. It was acknowledged by William Mason on the 10th
of that month—the day the partnership was to commence;
and by Amasa Mason, and Gibson, on the 14th, or four days
afterwards. On the last mentioned day, Gibson made an
affidavit that the capital mentioned in the certificate had
actually, and in good faith, been paid in cash; and three
days thereafter, that is, on the 17th day of March, the certifi-
cate and affidavit were filed with the clerk. If these acknowl-
edgments and acts of the plaintiffs—all of which took place
long before the transaction giving origin to the present suit—

are not evidence in their favor, it is not easy to comprehend the legal principle admitting articles of partnership as such evidence.

It is objected that the evidence consists wholly of plaintiffs' admissions; and that, although such admissions are evidence between themselves, as well as in favor of third persons, of a partnership, they are not evidence in their favor against third persons. The admissions are something more than dry, naked declarations: they are a part of the *res gestæ*—part and parcel of acts done by plaintiffs, in pursuance of law, with a view to limit the liability of two of the partners. They are found embodied in a certificate which the law requires should embrace them, and which, without them, would be nugatory, Starkie on Evidence, vol. 1, p. 52, says: "In general, where the evidence is offered as a mere fact which is connected with the matter in dispute, and not with a view to affect the party, otherwise than as the actual existence of the fact affects the nature of the transaction itself; then, although it was a transaction between others, yet, as a mere fact, and part of the *res gestæ*, it is evidence. Suppose, for instance, that goods consigned by A to B are injured by the defendant while they are in the hands of the carrier; in an action for the wrong, brought either by A or B, according to the circumstances, it would be competent to either of them, being plaintiff, to establish his right of property in the goods, by proof of such an agreement between them, as either left the right of property and of action in himself, or vested it in him, by the delivery to the carrier; this would be, it is true, nothing more than an agreement between A and B to which the defendant was not privy, but it would be evidence against him, not as concluding any right of his without his assent, but as affecting the nature of the transaction itself, and showing to whom the injury was done."

If the certificate was to be treated as an admission only, I should still hold it competent evidence for plaintiffs of a partnership. An admission by A that he and B are

partners, is evidence against A of such partnership in favor of B or a third person, but it is not evidence against B. If it were, it would be in A's power to subject B and his property to the payment of A's debts; — nay, more, it would enable A to claim an interest in B's property, by declaring the existence of a partnership between them. The sole object of the rule is to protect B against the dishonesty of A. Now it is clear, the reason of the rule does not apply to admissions made by both A and B, or by all of the partners; and where the reason of a rule of evidence ceases, the rule itself is of no force. To apply it in such a case would impede the administration of justice, by throwing as an obstacle in its way what was intended only to rid it of impurities. Such an admission is evidence of a partnership in fact, because made by all of the partners — the admission of each one concluding him individually; and a partnership in fact, is a partnership as to all the world. There is no such thing as a partnership between the parties themselves, and not as to third persons. It is not essential to a partnership that it should be public, or known to the world. All rights acquired, and all debts incurred, by it, are partnership rights and liabilities, whether the persons dealing with it had notice of the partnership or not. If ignorant of its existence at the time, a subsequent discovery works no injury to them: if creditors, it gives them a larger number of persons to whom they may look for payment: if debtors, their liability is not increased, as it is matter of no moment to them whether a sum of money they are owing, when paid, goes to one or more persons, so long as they can not be called on to pay a second time.

In the case before us, the partnership business was to be carried on in the name of Gibson, and the wheat in controversy was purchased in his name. Admitting the wheat belonged to him individually, the judgment record will be a bar to any future action by him, as he is one of the plaintiffs.

When several persons are jointly interested in a contract the action must be brought in the name of all, or the plaintiffs will be nonsuited on the trial. It was to bring themselves within this rule of law — to show a joint interest in the wheat between themselves, and not their right to it against defendant, that made it necessary for plaintiffs to prove the partnership. The question of partnership affects defendant in no way except as to the form of the remedy against him; viz. whether the action should be in the name of Gibson alone, or of all the plaintiffs. It has nothing to do with the right to the wheat between him and plaintiffs; and, however determined, makes nothing against his right, or that of any other person, to the wheat. It is a question of right as to the wheat between the plaintiffs alone; and the right being established as between them, the form of the remedy follows as a necessary incident. Hence, " a father who holds out to the world that his son is his partner, and who sends bills and signs receipts in their joint names, in an action brought in his own name, is not precluded from proving that his son is not a partner."— *Glossop v. Colman,* 1 *Stark.* 25 (2 *E. C. L.* 279) ; *Kell v. Nainby,* 10 *B. & C.* 20 (21 *E. C. L.* 17).

Did the certificate tend to prove a general partnership? At common law, all partners are alike liable for the debts of the firm. The only difference between. a common law partnership and a limited partnership under the act (for they are both partnerships) is, that in the latter the liability of some of the partners is limited to the capital invested by them in the partnership. This is a personal privilege, conferred by the statute when its provisions have been strictly complied with, but not otherwise. In the case before us the act was but in part complied with. The certificate was made and acknowledged, and, with the requisite affidavit, was filed. But it was not recorded. Why it was not, does not appear. It may have been from various causes; as ignorance of the law requiring it to be recorded,

or negligence in not paying the clerk for making the record, or a subsequent determination not to claim the benefits of the act. From whatever cause, it did not put an end to the partnership, but left it as if nothing had been done under the act — an unlimited partnership, or partnership at common law. Gibson, who was to be the general partner, and in whose name the business was to be done, states, in his affidavit filed with the certificate, that each of the other partners had "actually and in good faith paid in cash" the sum named in the certificate to have been contributed by him. The partnership was then launched, if not before, and there is no evidence of a subsequent dissolution.

As the error in the charge was on a point of law not involved in the case, and could not have injured the defense, I think the judgment should be affirmed.

CAMPBELL J. did not sit in the case, having been counsel for one of the parties.

*Judgment reversed.*