# Walter L. C. Biddle, Appt., *v*. D. Dodge Tomlinson et Ux.

While costs in equity proceedings are largely in the discretion of the court, it must be a reasonable and not an arbitrary discretion.

If costs are withheld from the successful party, some sufficient reason for it must appear by the record.

Where the purchaser of land, sold under judgment for arrears of ground

Cited in Burke v. Teller, 11 Pa. Co. Ct. 59, 60, 1 Pa. Dist. R. 23, and in Walker v. West, 16 Pa. Co. Ct. 99, 100, 1 Lack. Legal News, 42, 4 Pa. Dist. R. 85, holding in both cases that the discretion of the court in relation to costs must be reasonably and not arbitrarily exercised.

rent, is subsequently informed by the counsel for the former owner of the land that a rule has been taken to open the judgment, but a deed is made to the purchaser by the sheriff and the rule is discharged, and then the former owner of the land files a bill against the purchaser and judgment creditors to set aside the sale as fraudulent, but the bill is dismissed for want of proof of fraud, the purchaser is entitled to his costs.

(Argued January 26, 1887.   Decided March 7, 1887.)

January Term, 1887, No. 79, E. D., before MERCUR, Ch. J., GORDON, PAXSON, TRUNKEY, STERRETT, and GREEN, JJ.   Appeal from a decree of Common Pleas No. 3 of Philadelphia County dismissing a bill in equity.   Affirmed, with modification as to costs.

Robert T. Corson, Esq., to whom the case was referred as master, reported as follows:

Charles H. Fisher and wife, by indenture dated February 17, 1846, and duly recorded, etc., granted and conveyed to Henry Knight and Thomas Armington in fee a certain lot of ground situated on the west side of Carlisle street, 181 feet north of Brown street, in the city of Philadelphia, containing in front on said Carlisle street 15 feet, and extending in depth 75 feet, 8 inches, to Burns street, reserving thereout a yearly ground rent of $42.

Henry Knight and Thomas Armington, by indenture dated July 14, 1846, and duly recorded, granted and conveyed the same lot to John F. Armington, subject to the ground rent.

On April 2, 1847, a judgment against John F. Armington for $500 was entered of record in favor of John Malin.

On December 17, 1851, John F. Armington and Catharine, his wife, conveyed the said premises to Josiah Hibberd, consideration $1,000, subject to the ground rent.

On December 20, 1851, Josiah Hibberd conveyed the said premises to Catharine Armington, wife of the said John F. Armington, consideration $1,000, subject to the ground rent.

These last two deeds were recorded on January 22, 1852.

On April 1, 1852, the judgment of April 2, 1847, was revived by an agreement filed of record and signed by the said John F. Armington, but without notice to Catharine Armington; and a fieri facias was issued thereon, under which the property in question was returned "levied and condemned."

A *venditioni exponas* was subsequently issued, and said

premises sold to John Wurfflein, one of the defendants in the bill, for. $100, to whom George Magee, Esq., sheriff, on December 30, 1856, made a deed in fee for the same, subject to the ground rent.

Wurfflein took possession of the premises, collected the rents, paid accruing ground rent until April 12, 1867, when he purchased the ground rent from Rebecca Snowden, in whom the same was then vested in fee, and a deed to him was subsequently made for the same.

Wurfflein continued in possession until May 1, 1869, when he conveyed said premises to John Jacob Knoell by the name of Jacob Knoell, for the consideration of $3,600. This deed recites that by the deed from Snowden to Wurfflein, the ground rent "merged and became forever extinguished."

Knoell took possession of the property, occupied a portion of it, and received the rents up to the time of his decease in 1875, when his widow and children, devisees in his last will and testament, succeeded him, and continued in possession, received the rents, etc., until September, 1882.

Catharine Armington died on March 15, 1856, leaving, her surviving, her husband, the said John F. Armington, and children, Ann E., Sarah H., John M., Caroline B., and Monterey Armington.

John F. Armington died in February, 1877, and in September, 1877, the heirs of Catharine Armington brought an action of ejectment for the lot in question.

The plaintiffs in this ejectment suit contended that on the death of their mother, Catharine Armington, their father, John F. Armington, became entitled to a life estate in said premises as tenant by the curtesy, with reversion in themselves in fee, subject to the ground rent; that the Malin judgment, revived without notice to her, did not bind more than the life estate of John F. Armington, and that the sheriff's sale passes only that life estate to John Wurfflein; that, after the death of the said John F. Armington, they became entitled to possession of the premises in question, subject to the ground rent.

The devisees of Knoell defended the ejectment.

The case was tried on October 10, 1881, and a verdict rendered for the defendants, and judgment entered thereon.

This judgment was reversed on error to the supreme court, the opinion of the court, delivered on March 23, 1882, holding

that the plaintiffs were entitled to recover on their title.  12 W. N. C. 113.

The case was again tried on October 16, 1882, and a verdict rendered for the plaintiffs; the jury also assessed the damages for mesne profits at $1,300, and judgment entered thereon.

In estimating the mesne profits no allowance was made to the Knoells for ground rent.

On April 1, 1882, a summons covenant sur ground rent deed first recited was issued in the name of John Wurfflein, assignee of Rebecca C. Snowden, assignee of Joseph H. Roach, assignee of Charles H. Fisher, by whom the ground rent had been created, against Henry Knight and Thomas Armington, the original covenantors.

On May 17, 1882, judgment was obtained thereon, without notice to the heirs of Catharine Armington, on two returns of *"nihil habet"* for the arrears of ground rent from July 1, 1867, to January 1, 1882, $918.45.

The alias summons was returned "served on Christian Knoell, tenant in possession."

On June 20, 1882, a *venditioni exponas* was issued on this judgment, and the property advertised for sale.

On June 28, 1882, the following order was made in the ground rent suit:

"And now the court, on motion of ——— Pile, Esq., and an affidavit, filed, and for the heirs of Catharine Armington, terretenants, grant a rule to show cause why judgment should not be opened, *venditioni exponas* set aside, and the terretenants admitted to make a defense.  Proceedings to stay meanwhile."

On July 1, 1882, this order was made:

"Rule continued and sale to proceed, subject to the rule."

On July 3, 1882, the property in question was put up for sale by the sheriff.

There were three bidders at the sheriff's sale; a gentleman representing John G. Johnson, Esq., counsel for the Knoells; Joseph M. Pile, Esq., representing the Armington heirs, and the defendant, Walter L. C. Biddle, to whom the property was sold for $2,050.

This sum was a fair market price for the property.

No notice of the rule to open the judgment, and set aside the *venditioni exponas,* was given at the sheriff's sale; but after the property had been struck down, and the sale book had been

signed by Mr. Biddle, Mr. Pile asked him whether he knew that there had been a rule granted to open the judgment. Mr. Biddle replied that he did not. This was the first knowledge that the purchaser had that such a rule had been granted; but before he paid the balance of the purchase money, and before the delivery of the sheriff's deed, he called upon Mr. Pile, and a conversation took place between them on the subject of the litigation between the heirs of Catharine Armington and the Knoells. Mr. Pile at that time handed Mr. Biddle a copy of plaintiff's paper book in the case of Armington v. Rau, in the supreme court.

On July 3, 1882, the rule to open judgment and set aside the *venditioni exponas* was discharged.

On July 15, 1882, Enoch Taylor, Esq., sheriff, executed a deed in fee for said premises to the defendant, Walter L. C. Biddle, subject to the said ground rent of $42.

On November 18, 1882, the undersigned was appointed auditor to distribute the fund in court arising from the sheriff's sale above set forth.

On December 2, 1882, the bill in equity in this case was filed; and one of the prayers of the bill for a decree that the fund in court be impounded was subsequently granted by the court, the opinion upon this branch of the case being reported in the Legal Intelligencer, 1883, p. 4.

On February 14, 1883, a *venditioni exponas* was issued on the judgment recovered by the heirs of Catharine Armington for mesne profits, and on March 5, 1883, all the estate, right, interest, and title of Charles and Christopher Knoell in the said ground rent of $42 was sold by the sheriff for $950.

Of this fund, after payment of the sheriff's costs, the sum of $118.75 was paid to Mr. Pile for plaintiff's bill; and the balance, $776.35, was applied towards payment of the judgment of the heirs of Catharine Armington for mesne profits.

The bill in equity in this case was filed by D. Dodge Tomlinson and Caroline B., his wife, in right of said Caroline B., who is one of the heirs of Catharine Armington, against John Wurfflein, Henry Knight, Thomas Armington, Walter L. C. Biddle, John M. Armington, William Elliott and Sarah H., his wife, Charles Gausline and Anna E., his wife, Monterey Armington, Charles Knoell, and Christopher Knoell.

An answer was filed by Walter L. C. Biddle.

A demurrer and answer was filed by Charles and Christopher Knoell.

A demurrer and answer was filed by John Wurfflein.

On March 27, 1883, a judgment *pro confesso* for want of an answer was entered against John M. Armington, William Elliott and Sarah H., his wife, Charles Gausline and Anna E., his wife, and Monterey Armington.

The bill alleges that the suit above recited for arrears of ground rent, and the judgment, execution, and sale thereunder to Walter L. C. Biddle, were part of a scheme fraudulently conceived by the said Charles and Christopher Knoell, or in their interest, for the purpose of depriving the heirs of Catharine Armington of their title to the premises in question.

The prayers of the bill are for a decree that the fund in court be impounded; that the obtaining of the said judgment and sale under the process of this court thereon is fraudulent, void, and of no effect against the heirs of Catharine Armington; that the deed made by the sheriff to the defendant, Walter L. C. Biddle, be declared void and of no effect; that an injunction may issue restraining the defendants from setting up or claiming title to said premises under the said deed made by the sheriff to Walter L. C. Biddle.

On behalf of plaintiffs it was contended: That if John F. Armington, the life tenant, had purchased the ground rent, he could not have brought suit for arrears while in possession and in receipt of the rents; that Wurfflein and Knoell, holding the same estate, were also bound to keep down the ground rent; that the Knoells being in possession and in receipt of the rents and profits, and being also the equitable owners of the ground rent, the arrears were paid as they accrued, and no ground rent was due; consequently the judgment for the arrears was void and passed no title to the sheriff's vendee, and that, having this defense, they could assert it against him; that even if a suit could have been brought for the arrears of ground rent, Wurfflein having parted with his title, his suit was a nullity.

On behalf of the defendant, Walter L. C. Biddle, it was contended: That Mr. Biddle, being a bona fide purchaser at sheriff's sale without notice, took the title discharged of all prior equities; that the plaintiffs cannot now be heard, for they have had their day in court; and if dissatisfied with the refusal of the court to stay the sale, they had their remedy by writ of error.

The case of Armington v. Rau, 12 W. N. C. 113, decided that the heirs of Catharine Armington were entitled to the premises in question. The effect of this decision was that Wurfflein owned only the life estate of John F. Armington, from which it follows that the purchase of the ground rent by him did not have the effect it was supposed, and that his deed to Knoell was not correct in reciting that by the conveyance of the ground rent to him by Rebecca Snowden, it had "merged and become forever extinguished." Cadwalader, Ground Rents, § 465.

Consequently, the deed from Wurfflein to Knoell, although pretending to convey a fee in the land, actually conveyed his estate therein, to wit: the life estate of John M. Armington, which was all that passed by the sheriff's deed to John Wurfflein.

Upon the death of John F. Armington, the tenant by the curtesy, in February, 1877, the heirs of Catharine Armington became entitled to the premises in question in fee, subject to the ground rent; and prima facie they were bound to pay the same as it accrued, for even admitting that the arrears had been paid as they accrued up to the death of the tenant by the courtesy, under the decisions of Pennock v. Imbrie, 3 Phila. 140; McDonald v. Heylin, 4 Phila. 73; Jewell's Estate, 1 W. N. C. 404, yet certainly it became a charge upon the estate of the Armington heirs after that time. And if due after that date was not the suit properly brought?

This view of the case seems to have been adopted by the plaintiffs; for in the ejectment suit, in estimating the mesne profits, no allowance was made for the ground rent that had fallen due from the death of the tenant by the curtesy to the date of their verdict.

Surely, if the Armington heirs were entitled to their verdict for the mesne profits during the time the Knoells were in possession, the latter, as equitable owners of the ground rent, were entitled to an allowance for the ground rent that had fallen due during that period. And having failed to receive this allowance, why had they not the right to bring suit?

The reason given why the plaintiffs should be excused from their obligation to pay the ground rent is that the Knoells, equitable owners of the ground rent, were unlawfully (as was decided in the case of Armington v. Rau) in possession of the very property out of which the rent charge issued.

It seems to the master that these two separate and distinct

claims, the one for the ground rent, and the other for the land and damages for the wrongful withholding possession, must be asserted in a proper legal manner; and the attempt to set off the one against the other does not appear to be the proper way.

Undoubtedly, there was ground rent due; and equally true it is that the Armington heirs were entitled to compensation for the use of their land; but it does not follow from this that one claim cancels the other, and the case of Pennock v. Imbrie, 3 Phila. 140, cited by plaintiffs, and the language of Judge HARE, "that when the same hand is to receive and to pay, the law will presume payment," hardly applies to the case under consideration, for here there are different hands to pay and receive.

The two claims are separate and distinct; and we find that in this court the Knoells get judgment for the arrears of ground rent, and in common pleas, No. 4, the Armington heirs in the ejectment suit recover their property, and get a verdict for mesne profits. If the Armington heirs were dissatisfied with the judgment for the arrears of ground rent, and the refusal of the courts to stay the sale and let them defend, they had their remedy by writ of error to the supreme court. Fraley v. Steinmetz, 22 Pa. 440.

This, upon entering security, would have been a *supersedeas*, and the sheriff's sale would not have taken place.

The answer to this: that they, not being parties to the suit, were not entitled to a writ of error, does not answer the contention; for if any error was committed, it must have been the refusal to make them parties to the suit.

The master does not attach much importance to the contention that the suit to recover arrears of ground rent was a nullity because brought in the name of Wurfflein, after the latter had parted with his title.

The title he had parted with was the title to the ground, the legal title to the ground rent was still in him, and the evidence shows that if he did not previously direct the suit to be brought in his name for the use of the Knoells, the equitable owners, he subsequently ratified the action of their counsel in using his name.

The deed from Wurfflein to Knoell was for the ground, and did not lie in the chain of title to the ground rent.

The sheriff's vendee would not be charged with constructive notice of this deed.

A purchaser is charged with constructive notice of what appeared in his chain of title.    Wade, Notice, p. 136; Woods v. Farmere, 7 Watts, 382, 32 Am. Dec. 772; Hetherington v. Clark, 30 Pa. 393.

The record, however, shows no conveyance of the ground rent by Wurfflein; and any purchaser in investigating the title to the ground rent would trace it to Wurfflein, and he would not be bound to go further.

The fact that Wurfflein conveyed the ground could not affect the title of the sheriff's vendee under the execution on the judgment for arrears of ground rent, for that was an entirely distinct title.

The legal title to the ground rent to this day is in John Wurfflein.    The master therefore thinks this position of the plaintiffs untenable.

The act of 1705, § 1, 1 Smith's Laws, 61, Purdon's Digest, 651, is in these words:    That "if any of the said judgments, which do or shall warrant the awarding of the said writs of executions whereupon any lands, tenements, or hereditaments have been or shall be sold, shall at any time hereafter be reversed for any error or errors, then, and in every such case, none of the said lands, tenements, or hereditaments, so as aforesaid taken or sold, or to be taken or sold upon executions, nor any part thereof, shall be restored nor the sheriff's sale or delivery thereof avoided, but restitution in such cases only of the money or price for which such lands were or shall be sold."

Under this act it is well settled that a bona fide purchaser at sheriff's sale without notice takes a good title, even if the judgment be subsequently reversed.    Heister v. Fortner, 2 Binn. 40, 4 Am. Dec. 417; Burd v. Dansdale, 2 Binn. 80; Warder v. Tainter, 4 Watts, 286; Feger v. Kroh, 6 Watts, 294, and Feger v. Keefer, 6 Watts, 297; Evans v. Meylert, 19 Pa. 402; Gibson v. Winslow, 38 Pa. 49.

In this case no notice was given at the sheriff's sale of the rule to open judgment and set aside the *venditioni exponas.*

The remarks made by Mr. Pile to the purchaser, after the property was struck down and the sale book signed, came too late. The contract of sale was complete at that time, and no notice given then could affect the purchaser; his interest and his obligations attached the moment the lot was struck down.    Gibson v. Winslow, 38 Pa. 49.

Notice, to affect one in equity, must be before he has parted with his money or placed himself in a position where he cannot resist the payment. Story, Eq. Jur. § 400 b.

Notice given before the delivery of the sheriff's deed cannot affect the question; the deed relates back to the moment the sale was made. Stewart v. Freeman, 22 Pa. 120.

No actual notice having been given, could the purchaser be charged with constructive notice?

Wade on the Law of Notice, p. 22, defines constructive notice as "in its nature no more than evidence of notice, the presumptions of which are so violent that the court will not allow of its being contradicted."

Story defines it as "knowledge implied by the court, on presumption too strong to be rebutted, that the knowledge must have been communicated." Story, Eq. Jur. § 399.

The master is not prepared to decide that the entry on the docket of the rule to open judgment, not brought home to the sheriff's vendee, could be such constructive notice as would defeat his title.

The purchaser was only bound to know that there was a judgment authorizing the execution at the time of the writ. Billington v. Welsh, 5 Binn. 129, 6 Am. Dec. 406; M'Kelvey v. Truby, 4 Watts & S. 323; Carr v. Wallace, 7 Watts, 394; Epley v. Witherow, 7 Watts, 163, and Woods v. Farmere, 7 Watts, 382, 32 Am. Dec. 772.

In Feger v. Kroh, 6 Watts, 294, where land was sold under a void judgment, the sheriff's title was sustained and the injured party awarded restitution out of the proceeds under the act of 1705.

To the same effect is Feger v. Keefer, 6 Watts, 297; Evans v. Meylert, 19 Pa. 402; Warder v. Tainter, 4 Watts, 286.

In view of the facts that the whole case of the plaintiffs is based on this doctrine of constructive notice, that the purchaser should have examined the docket entries, and that such examination would have disclosed the rule to open the judgment and set aside the venditioni exponas, let us see how far the facts of the case bear out this contention.

The rule was granted on June 28, eight days after the venditioni exponas had issued, and after the property was advertised for sale, and in the regular course of business was probably not docketed until the following day.

The order of the court was made on July 1, 1882, and is as follows:

"Rule continued and sale to proceed subject to the rule."

Under this order the court never could have intended that the sale was to go on, no notice to be given, the property sold to an innocent third party, and then set it aside and say the purchaser had not been injured, that he had constructive notice, simply because the docket showed the rule to open the judgment.

It would be more reasonable to suppose that the order of the court, made as it was after argument, and with knowledge of the plaintiffs' claim (for the affidavit in support of the rule shows their whole case), meant that the sale should proceed, and that th plaintiffs should give notice of the rule at the sale, so that bidders would not be deceived.

Had this been done any purchaser would have had actual notice; and as the plaintiffs seek to set aside the sale on the ground of constructive notice, it certainly would be more equitable to hold that they should have given this notice, rather than claim now that the purchaser is chargeable with constructive notice of any entry made on the docket after judgment, no matter how long after, and up to the very minute the property is knocked down; for if chargeable with constructive notice of such entry, made eight days after the *venditioni exponas* had issued, would he not also be chargeable with notice of an entry made on the docket an hour before the sale? If this were so, what purchaser at sheriff's sale would be safe? To decide that such a view of the law is correct would be in effect to say that no purchaser could safely take a sheriff's title.

On the other hand, could not this omission to give notice be charged upon the plaintiffs? For sins of omission are often as fatal in their consequence as sins of commission. Peters v. Kerper, 5 W. N. C. 523.

They were familiar with all the facts of the case; it was on their behalf that the rule to open the judgment was granted and the order made; and having failed to speak then as between them and the sheriff's vendee, the master thinks it inequitable that they should now be permitted to assert their title against him. Chapman v. Chapman, 59 Pa. 214; Millingar v. Sorg, 55 Pa. 215, 61 Pa. 471; Lawrence v. Luhr, 65 Pa. 236; Newcomet v. Brotzman, 69 Pa. 185.

To the mind of the master all the equities of the case are in

favor of the defendant, the sheriff's vendee, rather than with the plaintiffs, who, knowing that their title might be devested by the sales, stand idly by and without one word of warning see their property sold to a stranger totally ignorant of their claims.

One other point remains to be considered.

The judgment in this case was by default for want of an appearance on two returns of *nihil habet*.

This practice is recognized by the act of April 8, 1840 (P. L. 249).

A return of *nihil habet* to successive writs of scire facias on a mortgage is good without notice to the terretenant, and a sale under a judgment thereon passes a good title. Taylor v. Young, 71 Pa. 81.

In this case, in discussing the subject, the supreme court used the following language: "Our silence on the subject of ground rent covenants is not to be construed into an adjudication that we think a different principle is to be applied to judgments obtained thereon on two *nihils*. We do not deal with the point, because it is not before us in this record."

This meets the case under consideration so completely that the master dismisses that point without further discussion.

Upon the whole case, after careful consideration, the master has arrived at the following conclusions: that this court, having entered a judgment for the arrears of ground rent, and after argument having refused to stay the sheriff's sale thereunder, and having subsequently discharged the rule to open it, the sale passed a good title to the sheriff's vendee; that the suit was properly brought in the name of Wurfflein; that the allegations of fraud in the bill have not been sustained; that the property brought a fair market price, the proceeds of the sale now being in court; that the heirs of Catharine Armington, having recovered a judgment for mesne profits (a large portion of which they have already collected), will suffer no injustice by reason of the sale, for they can be awarded restitution out of the fund now in court.

The master therefore respectfully reports that, in his opinion, the bill is equity filed in this case by D. Dodge Tomlinson and Caroline B., his wife, should be dismissed with costs.

Twenty-nine exceptions to the master's report were taken by the plaintiffs below.

Upon dismissing them the court below, YERKES, J., delivered the following opinion:

"This bill proceeds upon the ground of fraud and conspiracy. There is no fraud shown on the part of the defendant Biddle; nor do we think that any actual or constructive notice of fraud has been brought home to him. No decree should be made against him, upon the ground of fraud; and as the only specific relief asked is that the sale to him be declared void, we can make no decree against the other defendants.

"Therefore, in our view of the case much of the contention is immaterial. We may say we do not agree with some of the conclusions of the master. We do not pass upon the validity of the title which passed by the sheriff's sale under the proceedings attacked by this bill; we leave that to be contested at law, if the parties are so minded.

"The twentieth exception is to the fact that the master did not report that the Armingtons were entitled to the money raised by the execution. Nothing in the bill or the prayers for relief gave notice to other claimants that its distribution was sought in these proceedings. Upon the question of distribution they have not had their day in court.

"Exceptions dismissed; and the bill is now dismissed, without costs."

The court entered the following decree:

"And now, to wit: September 24, 1885, this cause came on to be heard on exception to the master's report, and was argued by counsel; and thereupon, upon consideration thereof, it is ordered, adjudged, and decreed as follows, *viz.*: the exceptions are dismissed, the master's report confirmed, and the bill is dismissed, without costs and without prejudice to plaintiffs' legal right, if any they have, to maintain an action of ejectment for the same premises."

The assignment of error was as follows:

"The court below erred in entering the decree of September 24, 1885."

*Charles Hart,* for appellant.—Cited Yerkes's Appeal, 14 W. N. C. 510.

*Joseph M. Pile,* for appellees.—A court of equity has a discretionary power over costs.

The bill in this case was filed against several persons, and alleged fraud upon the part of some of them, in bringing a suit in the name of a stranger to the record, for arrears of ground rent when no rent was due, for the purpose of defeating the title of the Armington heirs to a certain property.

Fraud was abundantly proven on the part of some of the defendants; and the question was whether the appellant had been privy to the fraud. He certainly had notice of the equities of the Armingtons, and actual knowledge in ample time to avail himself of the knowledge and avoid all loss. But he chose to pay the purchase money and take the risk of litigation.

So far as the record shows, the appellant paid his own costs, and nothing more. No costs were taxed in the court below.

A purchaser for value without notice of the fraud is to be protected only to the extent of his payments prior to the time he receives notice; and if he pays after the notice, he must bear the loss. Beck v. Uhrich, 13 Pa. 636, 53 Am. Dec. 507; Juvenal v. Jackson, 14 Pa. 519.

The court did not agree with some of the conclusions of the report; and much of the expense of the reference was incurred in the attempt to sustain the arguments which prevailed with the master, and which were not concurred in by the court.

In Yerkes's Appeal, 14 W. N. C. 510, cited by the appellant, an order upon one of the parties had been made, by the court, to pay costs which were primarily to be paid by another. Gyger's Appeal, 62 Pa. 74, 1 Am. Rep. 382; O'Hara v. Stack, 90 Pa. 477.

OPINION BY MR. JUSTICE GREEN:

The decree reported by the master was that the plaintiffs' bill should be dismissed, with costs. The decree made by the court was that the bill should be dismissed, but without costs. Upon this appeal by the defendant Biddle, the only question raised is whether he should have been allowed his costs. No reason was given by the learned court below for withholding them; and after a patient examination of the record, we fail to discover any.

The allegations of fraud and conspiracy upon which the bill was founded were determined, both by the master and the court, to be untrue and without warrant. The reasons given by the master for refusing any of the relief prayed for appear to us to

be sufficient and satisfactory. While the learned judge says that he does not agree with some of the conclusions of the master, he does agree with those that are material, and which hold the claim of the plaintiffs in the bill to be without merit. The appellant is the successful party in an important, protracted, and apparently expensive litigation.

While it is true that costs in equity proceedings are largely in the discretion of the court, it must be a reasonable and not an arbitrary discretion. If they are withheld from the successful party in a case where he seems to be entitled to them, some sufficient reason for such action ought to be made apparent to us.

The master has found upon adequate testimony that Biddle was a purchaser of the property in question at a judicial sale on a fair price, and without notice of the rule to open the judgment for the arrears of ground rent and to set aside the vend. ex. That rule was subsequently discharged. The conversation with Mr. Pile did not take place until after the property was struck off to Mr. Biddle, and his rights as a purchaser had accrued. We cannot see how his right to a decree and also to costs can be affected by that conversation; and nothing else is offered as a reason for withholding costs.

The decree of the court below is affirmed as to so much of it as dismisses the plaintiff's bill, and is changed and modified as to the costs, so that the appellant shall have his costs; and it is now ordered that all the costs of the proceeding, including the costs of this appeal, be paid by the appellees.