## Weaver v. Oberholtzer, Appellant.

*Adverse possession—Tenant for life—Evidence—Witness—Party dead.*

Where a widow takes a life estate in land formerly belonging to her husband, as an heir at law of her minor son, and rents the land to a person to whom she subsequently attempted to leave it by will, and it appears that neither the widow nor her tenant and devisee ever set up any hostile claim to the fee in the land during the lifetime of the widow, an ejectment may be successfully maintained fifteen years after the death of the widow by a descendant of a brother of the widow's husband for an undivided interest in the land. In such a case the fact that the widow had made her will more than twenty years before the death devising the land to her tenant, and that this fact was well known in the neighborhood, is immaterial as affecting the plaintiff's right.

Syllabus—Charge of Court below.    [31 Pa. Superior Ct.

In the above case one of the defendants who claimed under the tenant is an incompetent witness as to matters occurring in the lifetime of a brother of the widow's husband through whom the plaintiff claimed title.

Argued March 14, 1905.    Appeal, No. 6, March T., 1906, by defendant, from judgment of C. P. Juniata Co., Sept. T., 1902, No. 106, on verdict for plaintiff in case of Joseph S. Weaver v. Sarah Oberholtzer et al.    Before Rice, P. J., Beaver, Orlady, Smith, Porter, Morrison and Henderson, JJ.    Affirmed.

Ejectment for land in Walker Township.    Before Shull, P. J. The facts are stated in the opinion of the Superior Court.

The court charged in part as follows:
[The defendants claim title to this land by what is known as title by prescription; that is, that they and those under whom they claim, have immemorially used and enjoyed it; that they have had undisputed, notorious, unequivocal and adverse possession of this property for the period, under our statutes, of twenty-one years, which would give them the title to this property, and they claim to hold as against the other heirs, who were the cotenants or tenants in common with them, by reason of improvements which David Weaver made upon this land, for a long period of years, having come into possession of it some time about the year 1840, or between that and the year 1844, and that you will recollect according to the testimony. The evidence tends to show that he built a barn upon the premises, built an addition to the house, tore away the original and built an end thereto, erected a spring house and wagon shed, and other improvements that were made, besides the clearing of the land and keeping up and repairing the fences.    Now, we say to you as a matter of law that a title can thus be acquired under the laws of this commonwealth; that is, the holding of adverse possession for a period of twenty-one years ripens into such title as gives one absolute ownership of the property; and that title may be in face of a formal gift, or even a deed.    It may rise higher than the gift and it may stand as cotemporary with a deed, and the title would be equally efficient in law.]    [1]

[The question for your consideration is as to whether or not

this was such an adverse, notorious and open user of this land, as against these cotenants, as would entitle the defendants in this action to hold and retain these premises. You will recollect the evidence that was adduced, tending to show the uninterrupted use by David Weaver for a long period of years. Then you will consider how David Weaver was holding this land; was he there asserting and declaring and claiming this title as against these other cotenants, who had a right in this land at the date of the death of Samuel Weaver, Jr., and from that time on down were owners in fee as cotenants with David Weaver? The assessment of the land is some evidence tending to show in whom the title lies, and that along with other evidence that would be sufficiently strong to show title goes to make title either in the one party or in the other; both, as you will remember, have adduced the assessor's lists showing how those assessments were made. The defendants have shown that they have paid the taxes in certain years upon the assessments, and by that they say they have given notice to the world that they were claiming the title to this property. On the other hand, the plaintiff has shown that from 1873 and 1875, and in 1879, when the assessors came to David Weaver, at the time of making the assessment, that David Weaver then said that the land should be assessed as the property of Samuel Weaver's heirs. Now, if he so stated in 1873, and continued to so state that the title was in Samuel Weaver's heirs, and did not claim title in himself, that would destroy his right by prescription; in other words, he did then that which would disclaim his claim of ownership to the property, and the statutory period would not run or begin to run until after that period of time had elapsed; and then you will ascertain whether or not the title ripened by prescription by the running for a period of twenty-one years from that period of time on.] [2]

[The defendants allege that the plaintiff is estopped from now coming in to recover his share in this land, by reason of the fact that he stood by, living in the near neighborhood to these premises, and saw these improvements being made by the defendant upon the premises, and that by reason of that he could not now come in and assert his right to the property. An estoppel is where one has done some act or has failed to do that which he should have done, or assert title to property that

he claims, leaving him who is living on it under the impression that he was permitting him to hold the title to it, when he should have spoken out and asserted his rights. Then we will consider whether or not there was guilt in either of these parties. Had these defendants the same knowledge of the rights under which they claim as the plaintiff in this case? If he had, if he knew that he had not acquired any other title than that as a tenant in common and was there living upon these premises, simply holding for the others until their title would absolutely ripen, until they could take possession of the premises on the death of Elizabeth Brubaker, the widow of Samuel Weaver, then the defendants here could not stand upon their title, because it would not ripen; neither could Elizabeth Brubaker do anything that would divest the title of the remainder-men, that is, the heirs of Samuel Weaver. Her right was that simply of a life tenant to these premises, and she could not divest them of their interest by any act of hers. The sole question is as to whether or not the other heirs stood by and let the title ripen against them in face of what had been done, and this you will consider along in connection with the fact that it is alleged that David Weaver paid rent through George Shellenberger or that George Shellenberger was a tenant under him and paid rents to him and that he paid this money over to Elizabeth Brubaker; because where one of several cotenants occupies lands, the other cotenants may assume that the cotenant is occupying in the interest of all, unless it is shown that he disclaims title by doing that which would amount to an ouster or disseizin. Was there that done by David Weaver which would show that he was claiming this title against his cotenants and such as would amount to an ouster or disseizin of the property?] [3]

[Now, under the evidence which has been adduced, you will decide whether or not there was such open, notorious, adverse possession in David Weaver for any one period of twenty-one years, from the time that he got possession of this property down to the time of the bringing of this suit, that would make a claim of title by prescription. And if you find that there was such ownership, which would give him an adverse possession, then your verdict would be for the defendants. On the other hand, if you find that David Weaver was upon the land

as a tenant under Elizabeth Brubaker, the life tenant, paying to her the rents during her life, your verdict should be for the plaintiff; because as tenant under a lease he could acquire no title by prescription, even though he did build houses and a barn upon the premises.] [4]

Plaintiff presented these points:

8. That there is no proof in the case that Joseph S. Weaver, the plaintiff, had knowledge of the contents of the will of Elizabeth Brubaker, and he was under no obligations to make inquiry about it. *Answer:* Affirmed. [14]

9½. That the doctrine of equitable estoppel is based upon a fraudulent purpose and a fraudulent result; if, therefore, the element of fraud is wanting, there is no estoppel; if both parties were equally cognizant of all the facts and the silence of Joseph S. Weaver produced no change in the conduct of the other, then there is no estoppel. *Answer:* Affirmed. [15]

Defendant presented these points:

4. If the jury believe from the evidence that Joseph S. Weaver lived in sight of this farm, saw David Weaver make extensive improvements upon it and occupy and use it as an owner; that after the death of Elizabeth Brubaker, on September 5, 1887, and the probate of her will, and until 1891, David Weaver paid to those entitled the legacies under this will, and Joseph S. Weaver kept silent and gave no notice of his claim, the jury may find that Joseph S. Weaver is estopped from setting up title as against these defendants, and twenty-one years from the death of Elizabeth Brubaker is not essential to effect such estoppel, but the same may be complete in a less number of years. *Answer:* This is refused. There is no evidence to show that Joseph S. Weaver had direct knowledge of David Weaver paying the legacies under the will; nor is there any evidence from which it can be inferred that he had such knowledge. [16]

7. Under all the evidence in this case the verdict should be in favor of the defendants. *Answer:* Refused. [17]

Verdict and judgment for plaintiff. Defendant appealed.

*Errors assigned* among others were (1–4, 14–17) above instructions, quoting them, and (19, 20, 21) rulings on evidence referred to in the opinion of the Superior Court.

*J. Howard Neely*, for appellant.

*F. M. M. Pennell*, of *Atkinson & Pennell*, for appellee.

OPINION BY BEAVER, J., October 5, 1906 :

Title to the land in dispute was shown in Samuel Weaver, Sr., who died, leaving to survive him his widow, Elizabeth, and minor son, Samuel, Jr., and eight brothers and sisters or their descendants. The widow was subsequently married to Jacob Brubaker and died on or about September 5, 1887. Her son, Samuel Weaver, Jr., died in his minority, intestate, unmarried and without issue. Under the intestate laws, therefore, his mother, then Elizabeth Brubaker, became tenant for life of the farm of forty acres in Juniata county, owned in his lifetime by her former husband, Samuel Weaver, Sr., title to which is now the subject of dispute in this action of ejectment.

The widow would seem to have admitted the title of her husband to the land in question, having, on April 18, 1825, presented her petition to the orphans' court of Mifflin (now Juniata) county, in which she sets forth : " That your peti-tioner's husband lately died intestate, leaving one child— Samuel Weaver—now about two years old ; that your peti-tioner's husband owned at his decease about forty acres of land in Walker township aforesaid, besides some personal property." This petition, although offered and admitted in evidence, is not printed in the paper-book of the appellant, but the omission is supplied by the appellee.

It appears from the evidence that the widow, after her re-marriage and the death of her son, leased this farm to David Weaver, the ancestor of the defendants, from whom, for a time at least, she received an annual rental, and that she devised it to him in her will, which was probated on September 14, 1887. The writ of ejectment was issued August 13, 1902, about fif-teen years after the death of Elizabeth Brubaker.

The action, as originally brought, purported to be in the name of the heirs at law of all the brothers and sisters of Samuel Weaver, Sr.,—eight in number—except the descend-ants of David Weaver, who were defendants.

Upon a rule to show cause why the plaintiff's attorneys should not file their warrant of attorney, it was agreed, upon

the argument of the rule, that the names of all parties plaintiff might be stricken out, except that of Joseph S. Weaver, and the record was so amended.

The plaintiff is one of four children of Jacob, one of the brothers of Samuel Weaver, Sr. The claim is, therefore, for the 1/32 part of the land in dispute.

In the absence of any evidence of ouster of the heirs at law of Samuel Weaver, Jr., and of an intention on the part of David Weaver to claim by adverse possession, during the lifetime of the mother, the claim of the defendants that they had title under the statute by such possession rests upon a very slender foundation. We fail to find anywhere in the testimony the hoisting of any flag of defiance, any act of hostility or any adverse claim to the title of the remaindermen, until after the death of the life tenant. The acts of their ancestor in repairing and rebuilding, in clearing, ditching and draining, are all entirely consistent with the duty which the life tenant, whose lessee he was, owed to the estate. After the death of Elizabeth Brubaker—or possibly the year before her death—the assessment was changed from "Samuel Weaver's heirs" to "David Weaver." This, however, becomes comparatively unimportant, in view of the fact that confessedly no title could have been acquired under the statute since the death of Elizabeth Brubaker.

There seems to have been an impression in the mind of Elizabeth Brubaker that she inherited a fee instead of a life estate from her son, Samuel Weaver, Jr., and this impression may have been shared by David Weaver, her tenant, during her lifetime, and the devisee named in her will. But such a mistaken impression could not, of course, change the character of the possession, nor would it be any notice to the remaindermen, unless communicated to them and a claim of adverse holding in pursuance thereof set up. They were justified in relying upon the character of the possession which the widow and those claiming under her had a legal right to take, in pursuance of the intestate laws.

On February 25, 1902, upon the petition of the plaintiff, an inquest was awarded to make partition of the land in dispute. When the appraisers were upon the ground, endeavoring to make partition, one of the defendants served notice upon them,

June 7, 1902, which reads: "Notice is hereby given that the property this day to be appraised by you belongs to the heirs of David Weaver, deceased, they having acquired title by adverse, exclusive, open and notorious possession for more than fifty years." This is claimed by the appellee to have been the first notice, actual or constructive, of such a claim. This, so far as we can see from the testimony, is well founded, unless the change in the assessment and the payment by David Weaver in his lifetime of the several sums mentioned in the will of Elizabeth Brubaker to be paid by him, of which no actual notice appears to have been given to the plaintiff, can be so construed.

Under the facts, as above recited, we are of opinion that the court would have been justified in affirming the eleventh point of the plaintiff—"That, under all the evidence, the verdict should be for the plaintiff," subject possibly to the question of the credibility of the witnesses who testified to the payment of rent by David Weaver to Elizabeth Brubaker, which was of course for the jury.

The plaintiff's twelfth point—"That there is no evidence in the case which would justify the jury in finding a verdict for the defendant"—was reserved. Under the verdict it was, of course, unnecessary to pass upon this point, but in the opinion of the court, overruling the motion for a new trial, it is discussed and it is said in reference thereto and in reply to the tenth reason assigned for a new trial, as to the attitude of the court: "Suffice here to say that the defense somewhat staggered us at the inception of the case. On examination of the answer filed we found that defendants first claimed the lands described in the writ by adverse possession for upwards of fifty years, and in the second part of the answer insist that they held by virtue of the provisions contained in the will of Elizabeth Brubaker, the life tenant, but 'who claimed to own this land in suit . . . . wherein and whereby she devised the lands in controversy to David Weaver aforesaid in fee,' he to pay certain legacies therein designated, and which he actually paid."

"To our conception of a title by prescription this was so antagonistic that we may have hesitated and wavered somewhat in getting our bearings. It seemed then, and strikes us even more forcibly now, that at that date David Weaver not

only did not feel secure in his title, but by payment of the legacies admitted the title for life or in fee in Elizabeth Brubaker, in either of which events the statute of limitations did not begin to run until after 1887, hence the title by adverse possession did not mature, and we might have affirmed the plaintiff's twelfth point: 'That there is no evidence in the case which would justify the jury in finding a verdict for the defendants.'"

It is claimed by the appellee that Elizabeth Brubaker made her will in 1863; that it was well known in the neighborhood that she devised, or intended to devise, the property in dispute to David Weaver; that, inasmuch as this fact was well known in the neighborhood, and the plaintiff, Joseph S. Weaver, lived there, he was bound to know it; that this constituted a gift on the part of the testatrix to the defendant's ancestor, and that, inasmuch as improvements were made subsequently to that time under the eye of the plaintiff, he was estopped now from claiming his share in the land. This general question is included, in its various phases, in the fourteenth, fifteenth, sixteenth and twenty-second assignments of error.

It is difficult to deal seriously with this proposition. Admitting that the will of Elizabeth Brubaker was made as claimed, admitting that the fact of the making of the will, and its contents, were well known in the neighborhood, it does not follow that Joseph S. Weaver knew of it, and if he did, he was not bound by it in any way, for the will could have been revoked the next day or at any time during the life of the testatrix. The mere making of a will is not even evidence of a gift, inasmuch as the will could not take effect until the death of the testatrix. All the testimony upon this subject was incompetent and was improperly admitted. The assignments of error, therefore, which are based upon it are without foundation.

The only remaining question worthy of consideration is raised by the 19th, 20th and 21st assignments of error. Was Jacob Weaver, one of the defendants, a competent witness, under the provisions of clause E of the 5th section of the Act of May 23, 1887, P. L. 158? This clause reads: "Nor, where any party to a thing or contract in action is dead, or has been adjudged a lunatic and his right thereto or thereun-

der has passed, either by his own act or by the act of the law, to a party on the record, who represents his interest in the subject in controversy, shall any surviving or remaining party to such thing or contract, or any other person whose interest shall be adverse to the said right of such deceased or lunatic party, be a competent witness to any matter occurring before the death of said party," etc. One of the exceptions to this general proposition is: "or unless the action be ejectment against several defendants, and one or more of said defendants disclaims of record any title to the premises in controversy at the time the suit was brought, and also pays into court the costs accrued at the time of his disclaimer, or gives security therefor, as the court in its discretion may direct, in which case such disclaiming defendant shall be a fully competent witness."

The thing in action here is the land, which descended under the intestate laws from Samuel Weaver, Jr., to his uncles and aunts or their descendants, subject to the life estate of his mother. One of those uncles was Jacob Weaver, through whom the plaintiff claims. Another was David Weaver, through whom the defendants claim. It seems clear to us, therefore, that the witness, who was one of the defendants, was not competent to testify as to anything which occurred before the death of Jacob Weaver, through whom the plaintiff claimed his interest in the property. He did not bring himself within the exception named in the clause referred to, by disclaiming title and offering to pay his share of the costs up to the time at which he was offered as a witness. Independently of this, however, we cannot see that the offer which was rejected, or any of the testimony which had been received and was stricken out, could affect the general question involved. Whether, therefore, it be held that the witness was incompetent, or that the testimony offered and what was stricken out was incompetent and irrelevant, the effect is practically the same.

We have not discussed the various assignments of error seriatim, nor do we think it necessary in this case to do so. The defendants received much more liberal treatment in the admission of testimony and in the answers to points than might, in strictness, have been accorded them. It is not necessary to refer to particular instances, inasmuch as the plaintiff, who received a verdict, is not in a situation to complain.

We have sufficiently indicated the grounds upon which we think the judgment should be sustained, and no good purpose will be subserved by further discussion of the case. The principles which underlie it have been so long and so well settled that it is unnecessary to cite particular cases in support of them.

Judgment affirmed.