Detwiler *v.* Coldren, Appellant.

Argued October 29, 1930.

Before TREXLER, P. J., KELLER, LINN, GAWTHROP, CUNNINGHAM, BALDRIGE and WHITMORE, JJ.

*Ellis L. Orvis,* and with him *John G. Love, S. D. Gettig* and *John J. Bower,* for appellant, cited: Beam v. Punxsutawney Playground Assn., 81 Pa. Superior Ct. 579; Beeson v. Hutchison, 4 Watts 442; Norris v. Dalrymple, 18 Pa. Superior Ct. 287; Burkholder v. Markley, 98 Pa. 37.

*Newton B. Spangler,* and with him *William G. Runkle* and *Ivan Walker,* for appellee, cited: Hetherington v. Clark, 30 Pa. 393; Nourse v. Lloyd, 1 Pa. 229; Safe Deposit and Trust Co. of Pittsburgh v. Bovard & Seyfang Mfg. Co., 229 Pa. 295; Hutchinson v. Chisler, 275 Pa. 380; Pringle v. Rogers, 193 Pa. 94; Donaldson ·v. Fellabaum, 68 Pa. Superior Ct. 347; Andrews v. Kissinger, 60 Pa. Superior Ct. 599.

OPINION BY KELLER, J., February 27, 1931:

This is an action of ejectment for a small tract of land on Nittany Mountain, Centre County, valuable for park purposes because of its extended view. The action was brought by the plaintiff pursuant to a rule entered under the provisions of the Act of April 16,

1903, P. L. 212, by the defendant in possession of the tract, requiring the plaintiff to bring an action of ejectment within six months thereafter.

Both parties claim from a common source, Henry F. Bitner.

Defendant claims under a special warranty deed from Henry F. Bitner and wife to Mary C. Stahl and James Stahl, her husband, dated February 22, 1913, but not recorded until July 21, 1925, for a tract, described by metes and bounds as hereinafter set forth, containing about eight acres. James Stahl died in 1925, and Mary C. Stahl, surviving tenant by the entireties, conveyed the tract, by the same description, to the defendant, by general warranty deed, dated July 14, 1926 and recorded July 15, 1926.

Plaintiff claims under a general warranty deed from Henry F. Bitner and wife dated March 23, 1918, and recorded April 9, 1918, for a tract described by metes and bounds containing about seventy-four acres.

Both of said conveyances were described as being part of three tracts of land containing together 110 acres and 119 perches conveyed to said Henry F. Bitner on May 28, 1910 by the heirs of Lydia Hoffer, deceased.

In the description of the land conveyed by plaintiff's deed there appear, inter alia, the following courses: "thence north 52¾ degrees east, about 130 perches to corner of tract of land recently sold by the above mentioned H. F. Bitner to Mrs. Mary Stahl; thence along said Stahl tract, up the mountain, to the edge or brow of the mountain to stakes; thence along the brow of the mountain 20 perches to the public road; thence along the public road 71 perches to the place of beginning." The point of beginning is described in said deed as follows: "Beginning at a point on the public road leading from Centre Hall to Bellefonte, 10 rods from the corner where the lands of J. J.

Arney, E. M. Huyett, S. W. Smith and James Stahl meet, thence,'' etc.

The description of the tract conveyed by Bitner to the Stahls is as follows: ''All that messuage, tenement and tract of land on the south side of Nittany Mountain......beginning at stones by the lands of E. M. Huyett, J. J. Arney and S. W. Smith corner; thence north 39¼ degrees west 10 rods to a point at the public road or turnpike leading from Centre Hall to Bellefonte; thence along said road to the top of the mountain 71 rods to a stake; thence along the edge of the mountain 20 rods to a stake; thence down the mountain to the Felmsly line 20 rods; thence along the Felmsly line to the place of beginning, containing about 8 acres.''

The deed to the plaintiff contains notice that the grantor had previously sold a tract of land to Mrs. Mary Stahl, which tract it calls for as adjoining the land conveyed to plaintiff; it uses the terms 'edge' or 'brow' of the mountain as synonymous; and three of its descriptions agree with the courses in the deed from Bitner to the Stahls, viz., it begins at a point in the road from Centre Hall to Bellefonte, ten rods from where the description of the defendant's deed begins, and at the end of the first course of that deed; it then, (reversing the courses), proceeds 71 perches up the mountain, following the public road, to the edge or brow or top of the mountain; and thence along the edge or brow of the mountain 20 perches. The next course in the two deeds although not using exactly the same language is apparently not contradictory. By the plaintiff's deed it runs from stakes at the edge or brow of the mountain ''along said Stahl tract,'' down the mountain ''to corner of tract of land recently sold by the above mentioned H. F. Bitner to Mrs. Mary Stahl;'' by defendant's deed it runs from

a stake at the edge of the mountain, "thence down the mountain to the Felmsly line, 20 rods."

This is a case where maps showing the land described in the two deeds and the alleged conflict between them would be most useful. The photographs of the maps in the printed record are too small to be decipherable or of any benefit.

Plaintiff claims that as the deed to the Stahls was not recorded until seven years after his deed was delivered and recorded it is void as to him, as respects any land conveyed to the Stahls included within the later conveyance to himself (Acts of March 18, 1775, 1 Sm. L. 422; May 19, 1893, P. L. 108). But the interpretation of the recording acts has been uniform that only a subsequent bona fide purchaser—or mortgagee —for a valuable consideration, *without notice,* is within their protection. From 1 Dallas 430, 435, and 4 Dallas 153, to 296 Pa. 340, the rule is unbroken. The intent of the Act of 1775 was to protect innocent purchasers without notice of the prior conveyance: Lessee of Henry v. Morgan & Cox, 2 Binney 497, 502. An unrecorded deed is fraudulent and void as to any subsequent purchaser for a valid consideration, unless the latter had actual or constructive notice of the title of the original vendee: Smith v. Miller, 296 Pa. 340.

Now the very deed under which the plaintiff claims gave him notice that his grantor had previously conveyed land to Mrs. Stahl and that the land granted by this prior conveyance adjoined and was a boundary line of the property being conveyed to him. It was incumbent on him to find out where the boundary line or lines of the prior conveyance to Mrs. Stahl, of which he had notice, ran, as affecting his own deed; for his line would not only yield to, but extend up to, the lines of the earlier deed: Thompson v. Kauffelt, 110 Pa. 209, 214; and the plaintiff understood this, for in his testimony of his conversation with James

Stahl, (p. 84a), which, as we shall hereafter see was inadmissible, he said ''I was buying up to the Stahl line.''

The learned counsel for the appellee and the court below have misapprehended the effect of the decision in Hetherington v. Clark, 30 Pa. 393, upon which they rely, and, hence, the case was tried on a wrong premise. That case did not hold that a recital of a prior unrecorded conveyance in a subsequent deed from the same grantor to another grantee, was not notice to the later grantee of the existence of the earlier deed, but that a subsequent recorded deed from the first *grantee* to somebody else, reciting the original and unrecorded deed was not notice to the later grantee who purchased the property from the original grantor. In that case Bomeisler first conveyed to Hirst by a deed which was not recorded. Hirst then conveyed to Harvey, reciting the deed from Bomeisler to him. This deed was recorded. Bomeisler then conveyed to Clark, by a very loose description, which made no reference at all to the deed to Hirst. It was held that the reference in the deed from Hirst to Harvey—, even though recorded—, of the original deed to Hirst was not notice to Clark, as there was nothing on the record to lead him to that deed (p. 395). It agreed in principle with the ruling in Boggs v. Varner, 6 W. & S. 469, where it was held that a purchaser was not affected by recitals in title papers to a *different* piece of property, but said: ''Notice of a deed is notice of its whole contents, so far as they affect the transaction in which notice of the deed is acquired'' (p. 473). It is hard to conceive of any more effective and easily proved notice of a former conveyance than to refer to it in a subsequent conveyance from the same grantor, and use it in fixing the boundary line or lines of the later deed. One might just as well say that a deed charging the conveyed premises with a mortgage

for $1,000, or a mortgage expressly made subject to a prior mortgage of $1,000, contained no notice of such $1,000 mortgage. A purchaser is charged with constructive notice of what appears in his chain of title, which includes his own deed: Biddle v. Tomlinson, 5 Sadler 288, 296; Ogden v. Porterfield, 34 Pa. 191.

Much testimony was taken by way of explaining alleged latent ambiguities in the deeds. Without a view of the tract or reference to an adequate map or maps it is impossible for us to decide whether there were any latent ambiguities which required explanation. A course "along a public road" follows the road in its windings, just as a course along a stream follows the meanderings of the stream: Wood v. Appal, 63 Pa. 210, 224. In the deed from Bitner to plaintiff the terms "brow" and "edge," as applied to the mountain, were used synonymously. The "top of the mountain" as used in the Stahl deed apparently does not refer to an exact fixed point or line, but to an area on the top of the mountain; for the whole tract in dispute is located on the top of the mountain. It is well settled that courses and distances in a deed must give way, where there is a conflict, to monuments and lines on the ground and to adjoiners corresponding to its calls: Collins v. Clough, 222 Pa. 472; Pringle v. Rogers, 193 Pa. 94, 98; Craft v. Yeaney, 66 Pa. 210; Ogden v. Porterfield, supra; Wharton v. Garvin, 34 Pa. 340; Green v. Schrack, 16 Pa. Superior Ct. 26; Richardson v. McKeesport, 18 Pa. Superior Ct. 199; Metcalf v. Buck, 36 Pa. Superior Ct. 58; Beam v. Punxsutawney Playground Assn., 81 Pa. Superior Ct. 579. But a stake in the ground, long since gone, is not such a monument. In Cox v. Freedley, 33 Pa. 124, 130, Judge WOODWARD said: "But what sort of a monument is a stake? It is so unsubstantial, that in country surveys, it usually indicates a corner which the surveyor never visited, and which exists only on

paper. Artificial boundaries which are meant to be fixed monuments, are made with more care than merely sticking a stake, which the next wind may blow over, which one of a thousand accidents may destroy, and which must rapidly decay, if not otherwise obliterated." If the controversy arises over the courses which form the boundary line between the two conveyances, the point in issue would appear to be whether there was a line marked on the ground which controlled the distances given in the deed; or whether there was such a definite and conspicuous line of demarkation at the brow or edge of the mountain as required a lessening of the distance stated in both deeds, or the term covered a wider area which would not affect the distances fixed in the deeds.

But another matter calls for a reversal of the judgment. James Stahl, one of the grantees in the original deed from Bitner was dead. His right had passed by the operation of law to his wife, and from her, by her own act, to the defendant, a party on the record who represented his (James Stahl's) interest in the subject in controversy. The controversy was over the Stahl title, which had passed to the defendant. The plaintiff was not a competent witness to testify to any matter occurring in the lifetime of James Stahl: Act of May 23, 1887, P. L. 158, section 5 (e); Stonecipher v. Keane, 268 Pa. 540, 546; Weaver v. Oberboltzer, 31 Pa. Superior Ct. 425; Reiter v. McJunkin, 194 Pa. 301; Wolf v. Wolf, 158 Pa. 621, 630; unless it related to some relevant matter which occurred between himself and some other person, or in the presence of such other person, who was living and competent to testify at the time of the trial and who did so testify upon the trial: Act of June 11, 1891, P. L. 287; and then only to such matters as had been testified to and which it was proposed to contradict:

Bowman's Est., 301 Pa. 337; Rudolph v. Rudolph, 207 Pa. 339.

Stahl being dead, Henry F. Bitner, his grantor, likewise was not a competent witness to impeach his deed by reducing the length of a boundary line and the corresponding acreage: Beeson v. Hutchison, 4 Watts 442; Carey v. Fairchild, 19 W. N. C. 411, 413, 6 Sadler 333, 342; nor to testify against the estate of the assignee or representative on the record of his deceased grantee. See Act of May 23, 1887, P. L. 158, section 5 (e); Murray v. N. Y. L. & W. R. Co., 103 Pa. 37; Carey v. Fairchild, supra; Land Co. v. Weidner, 169 Pa. 359, 365. In the last mentioned case Mr. Justice MITCHELL said, "A. J. Weidner was an incompetent witness. He was one of the grantors in the deed to Dolph and Dolph was dead." We have no doubt that Bitner has such an adverse interest in the litigation as disqualifies him from testifying against defendant, who represents Stahl's interest on the record. He was the source of the title which plaintiff was attempting to assert against Stahl. If he granted to the plaintiff, by deed of general warranty, land that he had previously sold and conveyed to the Stahls, his interest was adverse to the Stahls in supporting the later deed and in endeavoring to explain away his breach of warranty in his prior deed to them, by showing that he had made an error in measuring the course along the road up the mountain; for in the event of a judgment against the plaintiff he would then be liable to the plaintiff on his general warranty. On the other hand, if his deed to the plaintiff did not include the land in controversy, but his deed to the Stahls did, his attempt to lessen his conveyance to them and increase the grant to the plaintiff at their expense, would be to impeach his solemn deed by parol, after the death of his grantee. He would not have been a competent witness, after the death of

198

Stahl, in any suit against his widow to reform the deed based on matter occurring between him and the dead man; he does not become competent to do the same thing in an action brought by his subsequent grantee under a general warranty deed.

The 8th, 9th, 10th, 11th, 12th and 13th assignments of error are sustained. The judgment is reversed and a new trial awarded.